Filed 11/3/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.Z. et al., Persons Coming Under the Juvenile Court Law. | D070365 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. SJ13226ABCD) |
| v. | |
| ANTHONY R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Anthony R. challenges the juvenile court's denial of his request to be declared a third parent under Family Code section 7612, subdivision (c)[1] for two minors, M.Z. (Minor 1) and Z.Z. (Minor 2), who are the biological children of his girlfriend (mother) and her husband (Miguel Z.)[2] The juvenile court concluded section 7612, subdivision (c) was inapplicable because it found there was no existing parent-child relationship between Anthony R. and Minors 1 and 2.[3] (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1093-1094 (*Donovan L.*) [" 'an appropriate action' for application of section 7612, subdivision (c) is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child' "].) We conclude Anthony R. failed to meet his burden to establish a parentage claim under the Uniform Parentage Act (§ 7600, et seq.), which is

[1]    Further statutory references are to the Family Code unless otherwise indicated.

[2]    We refer to the minors generically as Minor 1 through Minor 5, to protect their identities. For the same reason, we refer to the fathers by using only their first name and the first initial of their last name. The parentage issue in this appeal only pertains to Minors 1 and 2.

[3]    Section 7612, subdivision (c) provides: " In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."

necessary to seek third parent status under section 7612, subdivision (c). We also conclude substantial evidence supported the juvenile court's finding of an absence of a parent-child relationship. We affirm the juvenile court orders.

BACKGROUND

A

Mother and Miguel Z. had two children during their marriage, Minor 1 born in 2009, and Minor 2 born in 2010. Mother and Miguel Z. filed for divorce in 2014, but the divorce was never finalized. Miguel Z. said he separated from mother because he could not stop using drugs and he was in and out of prison. In April 2015 after he got out of prison, he moved to Arizona in order to help support his sobriety. He began using heroin at 15 years of age. He used drugs daily. He said he would have bouts of sobriety, but would relapse and then get clean again.

After separating from Miguel Z. mother had three children with Anthony R., Minor 3 born in 2014 and a set of twins (Minors 4 and 5) born in 2015. Because the twins were premature, they were hospitalized for three and a half months before they were released in early November 2015.

The San Diego County Health and Human Services Agency (the Agency) investigated two referrals in 2014 involving mother and Anthony R. In both instances, methamphetamine was found accessible to the children in the home. However, in one instance mother and Anthony R. said the drugs belonged to a friend. The referrals were determined to be either inconclusive or unfounded for general neglect.

3

Anthony R. used heroin and methamphetamine since he was 14 or 15 years old. He had been "in the system" since he was eight years old. He had been in prison or jail since he was 18 years old. He spent 10 years in prison before he was released at age 30 in 2014. He denied using drugs in front of mother and said he would disappear when he was using drugs. He was in jail again from August 2015 until November 4, 2015, for a parole violation. Anthony R. had two prior dependency cases, involving older children he had with other women. His parental rights were terminated as to at least one of these other children.

Mother and the children lived with her aunt because she needed help with the twins after they came home from the hospital. However, the aunt would not allow Anthony R. in the home. After the aunt learned mother had sneaked Anthony R. into the home, the aunt asked mother to move out for failing to pay rent. Thereafter, mother, the children, and Anthony R. stayed in motel rooms.

B

One of the infant twins, four-month-old Minor 5, was found dead in mother's care on November 25, 2015. Chula Vista Police Department officers responded to a motel room after mother reported Minor 5 was not breathing. The motel room was dirty with food on the floor and broken cigarettes. Mother reported she thought one-year-old Minor 3 had rolled onto Minor 5 while they both slept with mother. Marks found on the baby's face, neck, and chest could have been caused by the baby being face down for a period of

4

time or by someone lying on top of the baby, but there was no clear evidence of suffocation.[4]  Anthony R. was not present at the time of Minor 5's death.

Mother denied using drugs, but when her blood was drawn she said she might test positive for marijuana.  High levels of methamphetamine and amphetamine were found in mother's blood.  Trace amounts of methamphetamine were found in Minor 5's blood and liver.  The cause of Minor 5's death was unexplained infant death with methamphetamine exposure as a contributing factor.

C

Mother was in a hotel room with Anthony R. two days before Minor 5's death and he smoked methamphetamine in mother's presence.  He also admitted he smoked in the bathroom where he would "hot box" with the shower running and something blocking the smoke from seeping under the door.  He said the children were not present and mother would not have known he was smoking.  Neither mother nor Anthony R. could give a reason for the presence of drugs in Minor 5's system.

Anthony R. failed to show up at an appointment with a social worker stating he was "on the run."  He was arrested in December 2015 for possession of methamphetamine with intent to sell and for violating his parole.  He reported he had been clean for a couple of weeks after his release from jail in November, but relapsed the week before Minor 5 died.

---

[4]    Minor 5's twin sister, Minor 4, had been readmitted to the hospital on November 15, 2015, due to a cold.  She was hospitalized at the time Minor 5 died.

D

Six-year-old Minor 1, said he and his siblings ate cereal every day when they lived in the motel and Minor 5 slept with a blanket that smelled like urine. Minor 1 stated his five-year-old sister, Minor 2, fed Minor 5 when he was alive. Sometimes Minor 1 would feed Minor 5. Minor 2 described how she would make bottles and feed Minor 5 when he wanted to eat.

By 2016, Minors 1 and 2 were both academically behind in school, due in large part to their frequent absences and late arrivals to school while they were in mother's care. Minor 1 was diagnosed with high functioning autism and needs structure and routine.

When Minor 1 was interviewed in January 2016 he stated mother visited Anthony R., but the children could not go because the "cops" would take Anthony R. away. Minor 1 stated, "He can't see us until he is out." Minor 1 reported Anthony R. was in jail because he does drugs. He also stated Anthony R. "steals and uses girls. He gets girlfriends he takes their money and phones."

E

The Agency filed dependency petitions for the children in January 2016 alleging they were within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivision (b). The petitions alleged the children had suffered or there was a substantial risk the children would suffer serious physical harm or illness by the inability of a parent to provide regular care due to substance abuse by mother and Anthony R.

6

Anthony R. completed parentage inquiry forms for each of the minors. As to Minors 1 and 2, he stated he lived with them off and on from 2014 until they were removed. He stated he told family and friends Minors 1 and 2 were his children. He stated he supported the children emotionally and financially. He said, "I am not the biological father, but I consider these children to be mine." He also said, "I love these children as if they are mine [and] have held them out as my own."

Anthony R. also submitted parentage inquiry forms for both of his biological children, Minors 3 and 4. He requested presumed father status as to Minors 1 and 2 under section 7611, subdivision (d), stating he had resided with the mother along with Minors 1 and 2 and his own biological children. He stated he held Minors 1 and 2 out as his own children.[5]

Miguel Z. also completed parentage inquiry forms for Minors 1 and 2 indicating they are his children and he was present at the hospital for their births. He stated he lived with Minors 1 and 2 from the time they were born until "last year." He stated he provided for Minors 1 and 2 during that period of time and claimed Minors 1 and 2 on his taxes and in connection with public benefits. Miguel Z. asked to be the presumed father to his own children, Minors 1 and 2, and asked the court to deny Anthony R.'s request for presumed father status as to these two children pursuant to section 7540 because Miguel Z. was married to mother and living with her when Minors 1 and 2 were born.

_____

5    Section 7611, subdivision (d), provides a presumption of parentage if "[t]he presumed parent receives the child into his or her home and openly holds out the child as his or her natural child."

7

Although still married to mother, Miguel Z. did not request parental status of Minors 3 and 4.

The court found Miguel Z. was the conclusively presumed father for Minors 1 and 2 pursuant to section 7540. The court found Anthony R. was the presumed father for Minors 3 and 4 under section 7611, subdivision, (d).

The court found the children were persons described by Welfare and Institutions Code section 300, subdivision (b)(1) and removal was necessary. The court ordered the children detained with supervised visitation and voluntary services for each of the parents.

F

The children's maternal grandfather stated mother had not held a job since 2003 and he helped her financially. He said mother tends to partner with "habitual criminals." When the maternal grandfather took in Minor 4, he asked mother for her social security money to buy baby food and diapers. He said there was only $400 in her account and mother had spent $300 in one day. He was not sure what she did with the money. Mother said she received social security money for the twins since they were premature. She also received $320 in cash aid and $900 in food stamps. She said her father helped her with rent before she started staying in hotels.

Mother reported Anthony R. helped her around the house and the children called him dad. He helped them with homework and took them to school. However, a teacher indicated Minors 1 and 2 did not bring their homework to school and they were constantly tardy.

In some interviews, Minor 1 referred to Anthony R. as his "dad." Minor 2 disclosed her "dad" Anthony R. pushed her and her mother onto a toy box. Both Minor 2 and Minor 1 said in unison, it was done "on purpose."

G

The juvenile court conducted a hearing regarding Anthony R.'s request to be a second presumed father for Minors 1 and 2. The parties stipulated the minors would testify as follows if called to testify:

"[Minor 1] would state that he knows his real father is named Miguel. He remembers what he looks like and that he has long hair that he puts in a ponytail.

"The minor remembers spending time with him here in San Diego. The last time he remembers being with his father was when his father came to take care of him and [Minor 2] for the afternoon. He's not exactly sure when this happened, but he knows it happened when the other three siblings were alive.

"He calls his father his father and he calls Anthony by his name. He stated that [Minor 2] calls Anthony her father.

"He doesn't really want to talk to his father, Miguel, on the phone because he wants to play instead."

Minor 2 would state, "she knows her real father is named Miguel. She remembers what he looks like and that he has long hair that he puts in a bun behind his head. She has a second father and his name is Anthony. He lived with her mom, but he is in jail now."

9

In an addendum report, the social worker noted she had met with Minors 1 and 2 in their foster home. They called Anthony R. "dad," but only brought him up once and did not talk about him. They usually talked about their mother and school.

The juvenile court denied Anthony R.'s motion for status as a third parent under section 7612, subdivision (c) concluding the statute did not apply because there was no ongoing relationship between Anthony R. and Minors 1 and 2 and, even if the statute did apply, there was no proof of detriment. The court considered the *Donovan* case and its holding section 7612, subdivision (c) does not apply without an existing parent-child relationship and bond.

The court found "both fathers have played limited roles in these children's lives. In fact, both father's lives have been beset by drug addiction, crime and lengthy incarceration." The court went on say there was no evidence Anthony R. had been "much of a parent to either [Minor 1] or [Minor 2] given his persistent use of drugs, criminal activity and incarceration." The court found Anthony R. would sneak or sinuate his way back into mother's life on occasion, "but he has not behaved as a consistent parent for these children." The court considered statements made by Minor 1 and Minor 2 to be "corroborative as to the absence of a relationship with [Anthony R.]. He is a father in theory and in name only, and both identify [Miguel Z.] as their true father." As a result, the court found there was "no ongoing relationship or bond between [Minors 1 and 2] and [Anthony R.]." The court also found "absolutely not one bit of evidence that would support that any detriment would eventuate should the relationship between these children and [Anthony R.] be disrupted."

10

DISCUSSION

I

As a preliminary matter, the Agency contends an order denying a presumed parent status is not an appealable order because it is not a dispositional order (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 668 [dispositional order is a final appealable judgment]) and it is not collateral to the general subject of the litigation (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368). However, the Agency does not object to this court exercising our discretion to reach the merits of the appeal.

The Supreme Court has noted " '[j]uvenile dependency law does not abide by the normal prohibition against interlocutory appeals.' " (*In re S.B.* (2009) 46 Cal.4th 529, 532.) In concluding an order under Welfare and Institutions Code section 366.26 regarding adoptability of a dependent child is appealable under Welfare and Institutions Code section 395, the court stated " '[t]he right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment.' " (*In re S.B.*, *supra*, at pp. 531, 537.) The Supreme Court concluded the "interests of parents and children are substantially affected" by a Welfare and Institutions Code section 366.26, subdivision (c)(3) order and also observed a "social services agency may also be substantially affected and wish to pursue an appeal." (*In re S.B.*, at p. 537.) Courts have similarly observed " '[a parent's] status is significant in dependency cases because it determines the extent to which the [parent] may participate in the proceedings and rights to which he [or she] is entitled' " such as

11

appointment of counsel, custody, and reunification.  (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)

Recent cases interpreting section 7612, subdivision (c) arose from different procedural postures and do not address the appealability issue presented here.  This court's decision in *Donovan L.*, *supra*, 244 Cal.App.4th at page 1078 involved an appeal from a juvenile court's disposition order in which the juvenile court ruled a child had three parents under section 7612, subdivision (c).  The case of *Martinez v. Vaziri* (2016) 246 Cal.App.4th 373 (*Martinez*) involved an uncle's appeal from an order denying his original parentage petition under section 7611, subdivision (d) to establish a parental relationship with a child as a third parent under section 7612, subdivision (c).

Assuming, without deciding, an order regarding presumed parent status is not directly appealable, we exercise our discretion and treat the notice of appeal as timely from the subsequent disposition order.  (Cal. Rules of Court, rule 8.406(d).)[6]

II

Anthony R. contends the court erred in denying his request to be a presumed father (§ 7611, subd. (d)) and a third parent to Minors 1 and 2 (§ 7612, subd. (c)).[7] Specifically, he contends the court erred in finding section 7612, subdivision (c) was not applicable to allow him to be a third parent to Minors 1 and 2 because he did not have an

---

[6]    On our own motion, we take judicial notice of the fact a disposition order was entered on June 28, 2016.  (Evid. Code, §§ 459, subd. (a), 452, subd. (d)(2); *In re Taylor* (2001) 88 Cal.App.4th 1100, 1103, fn. 2.)

[7]    Anthony R. does not dispute Miguel Z. is the conclusively presumed father of Minors 1 and 2.  (§§ 7540, 7541, subd. (b).)

12

existing parental relationship with them and the court failed to consider all relevant factors to determine detriment to Minors 1 and 2 if he was denied status as a third parent. He contends there was substantial evidence to the contrary. We disagree for reasons we shall explain.

A

*General Principles*

"Dependency law recognizes three types of fathers: presumed, alleged and biological. [Citations.] [¶] … A presumed father is one who meets one or more specified criteria listed in section 7611 …. [Citation.] Section 7611 sets forth a number of rebuttable presumptions of paternity, mostly concerned with various forms of marriage or attempted marriage to the child's mother. [Citation.] 'The statutory purpose [of section 7611] is to distinguish between those fathers who have entered into some familial relationship with the mother and child and those who have not.' " (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1208-1209.)

Section 7611, subdivision (d) provides presumed parent status if "[t]he presumed parent receives the child into his or her home and openly holds out the child as his or her natural child." A person requesting presumed parent status under section 7611, subdivision (d) must have a "fully developed parental relationship" with the child. (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776, italics omitted.) A "caretaking role and/or romantic involvement with a child's parent" is not enough to qualify. (*Id.* at p. 777.) A presumed parent must demonstrate " 'a full commitment to [parental] responsibilities– emotional, financial, and otherwise.' " (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801-

13

802.)  "The critical distinction is not the living situation but whether a parent-child relationship has been established.  ' "[T]he premise behind the category of presumed [parent] is that an individual … has demonstrated a commitment to the child and the child's welfare." ' "  (*Martinez*, *supra*, 246 Cal.App.4th at pp. 384-385.)  "One who claims he [or she] is entitled to presumed [parent] status has the burden of establishing, by a preponderance of the evidence, the facts supporting that entitlement."  (*In re T.R.*, *supra*, 132 Cal.App.4th at p. 1210.)

"As a general rule, ' "there can be only one presumed father." ' "  (*Donovan L., supra,* 244 Cal.App.4th at p. 1086.)  However, "the Legislature enacted section 7612, subdivision (c) to allow courts to recognize that a child has more than two parents in certain limited contexts:  *'In an appropriate action*, a court may find that more than two persons with a claim to parentage under this division are parents *if the court finds that recognizing only two parents would be detrimental to the child.*  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage.'  (§ 7612, subd. (c), italics[] added by Stats. 2013, ch. 564, § 6.5.)  … [S]ection 7612, subdivision (c) allows a court to recognize three parents only in 'rare cases' where a child truly has more than two parents."  (*Donovan L.,* at pp. 1086-1087.)

On appeal, we independently interpret statutes. However, we review factual findings regarding parentage under either section 7611 or section 7612 for substantial evidence. (*Donovan L.*, *supra*, 244 Cal.App.4th at p. 1088; *R.M. v. T.A.*, *supra*, 233 Cal.App.4th at p. 780.) "We view the evidence in the light most favorable to the ruling, giving it the benefit of every reasonable inference and resolving all conflicts in support of the judgment. [Citation.] We defer to the trial court's credibility resolutions and do not reweigh the evidence. [Citation.] If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling." (*R.M. v. T.A.,* at p. 780.)

B

*Presumed Parent Determination*

We first address the Agency's contention the court erred in failing to make a finding of whether or not Anthony R. qualified as a presumed father under section 7611, subdivision (d) before deciding whether he should be considered a third parent under section 7612, subdivision (c). The Agency contends the express language of the section 7612, subdivision (c) applies to "persons *with a claim to parentage under this division*" (italics added), meaning the person requesting third parent status must first meet the criteria for parentage under the Uniform Parentage Act. The Agency contends the focus of the inquiry for a presumed parent under section 7611, subdivision (d) "is primarily parent focused, i.e. what has the parent done during pregnancy, after pregnancy, and during the life of the child to support the child and provide for the child and mother's well-being. ([*In re T.R.*, *supra*, 132 Cal.App.4th at p. 1211].)" In contrast, the inquiry

15

for a third parent under section 7612, subdivision (c) "is largely child focused—what is the strength of the child's relationship to the parent, and will the child suffer[] detrimentally if the parent were not considered a third parent. ([Citation; *Donovan L.*, *supra*, 244 Cal.App.4th at p. 1089].)"

This court concluded the Legislature intended section 7612, subdivision (c) "to be narrow in scope and to apply only in 'rare cases' in which a child 'truly has more than two parents' who are parents 'in every way.' [Citation.] In those rare cases, the Legislature sought to protect the child from the 'devastating psychological and emotional impact' that would result from '[s]eparating [the] child from a parent.' [Citation.] Accordingly, 'an appropriate action' for application of section 7612, subdivision (c) is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.*, *supra*, 244 Cal.App.4th at pp. 1090-1091.)

In support of this conclusion, the *Donovan* court quoted an uncodified section of the legislation stating the purpose of the bill was to " 'abrogate *In re M.C.* (2011) 195 Cal.App.4th 197 insofar as it held that where there are more than two people who have a claim to parentage under the Uniform Parentage Act, courts are prohibited from recognizing more than two of these people as parents of a child, regardless of the circumstances' " and the bill did " 'not change any of the requirements for establishing a claim to parentage under the Uniform Parentage Act. It only clarifie[d] that where more than two people have claims to parentage, the court may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents.' " (*Donovan*

16

*L., supra,* 244 Cal.App.4th at p. 1090, quoting Section 1 of Senate Bill No. 274 (2013–2014 Reg. Sess.).)[8]

In *Martinez, supra*, 246 Cal.App.4th at page 384, the Sixth District noted section 7612, subdivision (c)'s use of "the phrase 'harm of removing the child from a stable placement' is in reference to the relationship 'with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.' " The *Martinez* court explained "in the dependency context, even a man 'with no biological connection to the child, no marital connection to the mother, and no way to satisfy the statutory presumption of paternity may nevertheless be deemed a presumed father' *if* he can prove 'an existing familial relationship with the child,' a bond the likes of which ' "should not be lightly dissolved." ' " (*Id.* at p. 385, quoting *In re D.M.* (2012) 210 Cal.App.4th 541, 554 [interpreting presumed father status under § 7611, subd. (d)].) The court concluded, therefore, "[i]t is this familial relationship with a parent, who has fulfilled the child's needs for care and affection for a considerable amount of time, that modifies the phrase 'stable placement' and that provides the context for the trial court's evaluation of detriment" under the statute. (*Martinez*, at p. 385.) The *Martinez* court determined its statutory interpretation was consistent with this court's conclusion " ' "an appropriate action" ' " under the statute requires " 'an *existing* parent-child relationship between the

---

8       "Statements in an uncodified section of the same bill ' "properly may be utilized as an aid in construing a statute." ' " (*Donovan L., supra,* 244 Cal.App.4th at p. 1090, fn. 15.)

17

child and the putative third parent, such that "recognizing only two parents would be detrimental to the child." ' " (*Ibid.,* quoting *Donovan L., supra,* 244 Cal.App.4th at p. 1091.)

Thus, the language of the statute, the legislative history, and the foregoing authorities lead us to the conclusion a court considering a request for status as a third parent under section 7612, subdivision (c) should initially determine whether or not a person seeking status as a third parent can establish a claim to parentage under the Uniform Parentage Act. Such an existing parent-child relationship is necessary before determining if recognition of only two parents would be detrimental to the child. This interpretation is consistent with the procedure under section 7612, subdivision (b) for reconciling competing parentage claims under sections 7610 or 7611. When presented with conflicting claims of parentage, "the court must make factual findings as to each claim, and then determine which one is entitled to greater weight." (*In re P.A.* (2011) 198 Cal.App.4th 974, 981; *Donovan L., supra,* 244 Cal.App.4th at p. 1093 [discussing weighing analysis under § 7612, subd. (b)].)

We conclude, however, any error in this regard in this case was harmless. Anthony R. did not meet his burden to establish he qualified as a presumed parent under section 7611, subdivision (d) or a third parent under section 7612, subdivision (c). The juvenile court found section 7612, subdivision (c) inapplicable precisely because it determined there was no existing parent-child relationship between Anthony R. and Minors 1 and 2.

*Substantial Evidence Supported Juvenile Court's Finding*

We need not reach the factors for determining detriment because there is substantial evidence to support the juvenile court's initial finding section 7612, subdivision (c) is inapplicable due to lack of an existing parent-child relationship. The court found Anthony R. was "a father in theory and in name only" and the statements of Minor 1 and Minor 2 corroborated "the absence of a relationship with him."

The evidence supported this finding. According to the stipulated testimony, Minor 1 and Minor 2 both knew their real father was Miguel Z. Minor 1 called Miguel Z. his father and Anthony R. by his name. Minor 2 knew "[s]he has a second father and his name is Anthony. He lived with her mom, but he is in jail now." Neither child reported a true parent-child relationship or bond with Anthony R. To the contrary, Minor 1 reported, "Anthony does drugs that is why he is in jail." Minor 1 knew Anthony R. "gets girlfriends he takes their money and phones." He also said Anthony R. left the night before Minor 5 died because "he doesn't care about us" and he did not come back. Both Minor 1 and Minor 2 reported Anthony R. pushed Minor 2 and mother onto a toy box "on purpose."

Although Anthony R. stated in his parentage inquiries he lived with Minors 1 and 2 "from 2014 off [and] on until removal," there was evidence he was incarcerated for months during this time and he admitted he would "disappear" for days at a time when he was using drugs. It is also not clear from the record who was living with whom. Anthony R. was prohibited from living with mother and the children when they lived

with mother's aunt. When the aunt learned mother sneaked him in, they were all asked to leave the home. Anthony R. then stayed in a hotel room with mother. Residing with a child out of personal convenience and self-interest is not sufficient to establish presumed parent status under section 7611, subdivision (d). (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1653.)

Although Mother and Anthony R. told social workers he would take care of the children, take them to school and make sure they did their homework, their teachers reported the children did not bring their homework to school and were constantly tardy or absent from school. Additionally, even though Anthony R. stated in his parentage inquires he supported the children financially, there was no other evidence of such support. Instead, there was evidence the maternal grandfather provided financial support for mother's family and mother received public benefits.

Having reviewed the record as a whole, we conclude there is substantial evidence to support the juvenile court's finding section 7612, subdivision (c) does not apply to this case because Anthony R. failed to show an existing parent-child relationship or bond with Minors 1 and 2 such that " 'recognizing only two parents would be detrimental.' " (*Donovan L., supra,* 244 Cal.App.4th at p. 1093-1094.)

DISPOSITION

The orders are affirmed.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

O'ROURKE, J.