Filed 10/19/20  In re K.G. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.G., A Person Coming Under Juvenile Court Law. | B302626 |
| _____ <br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LESTER S., <br><br> Defendant and Appellant; <br><br> Christa G., <br><br> Respondent. | (Los Angeles County Super. Ct. No. 19CCJP06160B) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rashida Adams, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Lester S.

Annie Greenleaf, under appointment by the Court of Appeal, for Plaintiff and Respondent, Christa G.

_____

Lester S. (father) appeals from the juvenile court's assertion of jurisdiction over his infant daughter. He argues the court erred in denying him nonstatutory presumed father status. We disagree and affirm.[1]

### *FACTUAL AND PROCEDURAL BACKGROUND*

In September 2019, daughter was born with a positive toxicology screening for methamphetamines and amphetamines. The Department of Children and Family Services (Department) filed a petition alleging mother had a history of substance abuse and had tested positive for drugs at daughter's birth. The petition further alleged that father had failed to protect daughter from mother's substance abuse.

The juvenile court detained daughter from both parents, and ordered monitored visitation for mother. Father did not appear at the detention hearing because he was in jail. He appeared at a subsequent arraignment hearing and requested presumed father status. He stated he had held himself out openly as the child's father. The court deferred paternity findings.

At the jurisdiction hearing in November 2019, father was still in custody and was not present. Mother, who was not married to father, testified she believed father was daughter's biological father. Mother and father had lived together for a year and a half, including the first seven months of her pregnancy. The parents stopped living together when father was arrested in August 2019. Father had never met daughter. The court also received evidence that father was not on daughter's birth

---

[1]   The Department of Children and Family Services informed us by letter dated April 20, 2020 that it takes no position in this appeal.

certificate, and had not bought necessities or financially supported the child. Mother, who had been unemployed for several years, had received "financial assistance with rent" from her mother.

The court found no basis for presumed status. The court sustained allegations of neglect, and ordered reunification services for mother. Even though father was not accorded presumed parent status, the court exercised its discretion to provide him with reunification services as well. Daughter was removed from mother's custody and placed in foster care. Father timely appealed.

## *DISCUSSION*

### 1. *The Law*

In dependency proceedings, fathers fall into four categories: alleged, biological, presumed or de facto. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801.) At issue here are the biological and presumed categories. A biological father is a man whose biological paternity has been established but who has not yet achieved presumed father status. (See *In re A.A.* (2003) 114 Cal.App.4th 771, 779.) A presumed father is "one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise.' " (*Jerry P.*, at pp. 801–802.) Only presumed fathers are entitled to reunification services and custody of the child, however, the court may exercise its discretion to order reunification services to biological fathers as the court did here. (*Ibid*; *In re Sarah C.* (1992) 8 Cal.App.4th 964, 976.)

Presumed paternity status is generally governed by Family Code section 7611 which provides the circumstances under which a father may demonstrate entitlement to presumed father status.

3

(Fam. Code, § 7611, subd. (d); *A.A.*, *supra*, 114 Cal.App.4th at p. 780.)  In addition to the statutory categories, courts have recognized equitable presumed status under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*).  (*Jerry P.*, *supra*, 95 Cal.App.4th at pp. 797, 813.)

Under the *Kelsey S.* doctrine, when an unwed, biological father promptly comes forward after learning of a pregnancy and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise—he is entitled to presumed parent status even if he has been thwarted by a third party.[2] (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849; see *In re Elijah V.* (2005) 127 Cal.App.4th 576, 582; see also *Jerry P.*, *supra*, 95 Cal.App.4th at p. 816 [extending the *Kelsey S.* principle to nonbiological fathers or "men . . . who have demonstrated their commitment to parental responsibility by meeting the conditions set forth in [*Kelsey S.*], none of which depends on biology."].)  We review factual findings regarding presumed father status for substantial evidence.  (*In re M.Z.* (2016) 5 Cal.App.5th 53, 64.)

---

[2]     There is a split of authority whether a *Kelsey* father has the same rights as a presumed father.  (See *In re Vincent M.* (2008) 161 Cal.App.4th 943, 947, 955–960 [noting that the *Kelsey* Court did not "hold under any theory that such a father had presumed father status" but only a right to notice and consideration for placement and services]; cf. *In re M.C.* (2011) 195 Cal.App.4th 197, 220 superseded on other grounds by statute [" 'a father asserting valid *Kelsey S.* rights may effectively qualify for presumed father status as the result of his constitutional right to parent, which overrides any contrary statutory direction.' "].)

## 2.    *Father Forfeited His Claim for* Kelsey S. *Status*

Father does not dispute that he does not qualify as a statutorily presumed father under Family Code section 7611, but instead argues for the first time on appeal that he is a nonstatutory presumed father within the meaning of *Kelsey S.* He contends that he did "all that he could reasonably do under the circumstances" to demonstrate his commitment to daughter but was thwarted by law enforcement's taking him into custody. (*Kelsey S., supra,* 1 Cal.4th at p. 850.)

The Department argues father forfeited his claim for *Kelsey S.* status because he never raised the issue below. We agree. "A party seeking status as a father under *Kelsey S.* must be clear he wants to be so declared." (See *Elijah V., supra,* 127 Cal.App.4th at p. 582 [the father did not "sufficiently raise[] the issue of whether he was a *Kelsey S.* father by arguing he was entitled to presumed father status"]; cf. *In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, 1116 [a parent need not make a formal request for *Kelsey S.* status where such a request would have been futile].)  Here, father argues that his general request for presumed father status sufficed to raise this issue.  By this argument, he acknowledges he did not expressly request to be declared a father under *Kelsey S.*  We have also reviewed the record on appeal, and there is nothing showing he made a *Kelsey S.* argument.  As father did not request *Kelsey S.* status in the juvenile court, he has forfeited the issue here.  In any event, even without forfeiture father has not shown he attempted to fully assert his parental rights and responsibilities but was only prevented by the unilateral conduct of law enforcement.

"In determining whether a biological father has demonstrated such commitment, the father's conduct both before

5

and after the child's birth must be considered. [Citation.] . . . A court should also consider the father's public acknowledgment of paternity, [and] his payment of pregnancy and birth expenses commensurate with his circumstances . . . . [Citation.]" (*In re Julia U.* (1998) 64 Cal.App.4th 532, 541.) If a father seeking *Kelsey S.* status does not fully commit to his parental responsibilities, the actions of any third party are irrelevant to the determination. (*Elijah V.*, *supra*, 127 Cal.App.4th at p. 584.)

Here, even when father was living with mother, the record does not show that he paid for child raising expenses. Although father contends he *did* support mother financially prior to his arrest, his citations to the record do not demonstrate as much. Instead, the record shows that father and mother lived together, that father was employed, that maternal grandmother provided mother with money for rent, and that mother signed a declaration stating father was not "helping to support financially, paying rent, [or] buying necessities . . . ." Aside from father telling his friends and family that he was going to be a father, there was no other evidence before the trial court that he attempted to assert responsibility for the child. Father has not shown that but for law enforcement's interference, he would have fully committed to his parental responsibilities if his actions had not resulted in his arrest. The record does not contain evidence that, even prior to being taken into custody, he took all of the necessary actions to qualify for *Kelsey S.* status.

Because father had not demonstrated trial court error, he also has not shown a due process violation based on that alleged error. We note that father may renew his request for presumed status at a later date. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454–455.)

6

### *DISPOSITION*

The order is affirmed.


RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.