Filed 12/14/21  In re M.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D079160 |
| Plaintiff and Respondent, | (Super. Ct. No. J520701) |
| v. | |
| R.V. et al., | |
| Defendants and Respondents; | |
| C.D., | |
| Defendant and Appellant; | |
| M.V., | |
| Appellant. | |

APPEALS from orders of the Superior Court of San Diego County, Browder A. Willis, Judge.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Respondent, R.V.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Respondent, A.W.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

C.D. (Stepfather) and his minor stepson, M.V., appeal an order in the Welfare and Institutions Code section 300 dependency proceedings for M.V., denying Stepfather's request to be declared a third parent pursuant to Family Code section 7612, subdivision (c)[1] (§ 7612(c)). Both Stepfather and M.V. contend that substantial evidence does not support the juvenile court's finding that M.V. would suffer no detriment if he were to have only two parents. Based on our review of the record, we disagree and conclude there is substantial evidence to support the court's finding and order.

Although Stepfather and M.V. also appeal the court's subsequent dispositional order placing M.V. with Mother on the condition that Stepfather not reside in the home, neither submitted any substantive briefing in support of their related appeals of that order and therefore we deem their appeals of

---

[1] All further statutory references are to the Family Code unless otherwise specified.

the dispositional order to be abandoned. (Cf. *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary."].)

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, M.V. was born to A.W. (Mother) and R.V. R.V. was present at M.V.'s birth and was named as his father on his birth certificate. In 2014, Mother and R.V. separated because of his substance abuse. Beginning in 2016, R.V. was incarcerated for three years and had not been in contact with M.V. until recently.

In 2014, Mother began a relationship with Stepfather and they later lived together and married. Stepfather had daughter, M.D., from a previous marriage and shared custody of her with his former wife.

In 2017, the San Diego County Health and Human Services Agency (Agency) received a referral that M.V. had been inappropriately touching female classmates in their private areas. M.V. stated that he was playing a "massage game." Mother and Stepfather denied inappropriately touching M.V. The Agency closed its investigation as unfounded.

In March 2021, the Agency received a report that in February an eight-year-old girl, E.T., who was M.D.'s friend, had been sexually abused by Stepfather while spending the night with M.D. at the home that Stepfather shared with Mother and M.V. E.T. told M.D.'s mother (Stepfather's former wife) that she had been lying in bed with M.D., Mother, and Stepfather, while they watched movies. After Mother and M.D. fell asleep, Stepfather rubbed E.T.'s vagina over her clothing, kissed her on the lips several times, and told her to keep it a secret. E.T. subsequently repeated those statements to police

and a forensic interviewer.  E.T. was terrified of Stepfather, but did not want to get him into trouble.  She ultimately decided to disclose his conduct, explaining "I was holding it in and it felt wrong."  When questioned, Stepfather denied the allegations and suggested his "bitter" former wife was responsible for them.  Mother stated that she found it difficult to believe Stepfather could do what E.T. alleged.

In March, on completion of its investigation, the Agency implemented a safety plan with Mother that required her to keep Stepfather out of the home.  However, shortly thereafter, Mother instead had M.V. stay with his maternal grandmother.

In April, the Agency filed the instant dependency petition under Welfare and Institutions Code section 300, subdivision (d), alleging that M.V. had been sexually abused, or there was a substantial risk that he would be sexually abused, by his parent or a member of his home.  In particular, it alleged that Stepfather had sexually abused E.T.  The petition also alleged that Stepfather had previously participated in sex addiction treatment and that Mother refused to remove him from the family home, thereby placing M.V. at substantial risk of being sexually abused.

In its detention report, the Agency stated that Stepfather's former wife reported that he was a sex addict and had an "unnatural" appetite for sex.  During their relationship, he had cheated on her with both men and women.  He had participated in a 12-step program for sex addiction, but did not complete it.  M.D.'s maternal aunt stated that Stepfather had "always been a pervert."  Stepfather admitted attending the program, but claimed he did so only because of pornography and his former wife gave him an ultimatum.

At the detention hearing, the court found the Agency had made a prima facie showing on the petition's allegations, detained M.V. out of the home, and gave the Agency discretion to place him in the maternal grandmother's home. Based on Mother's representations that R.V. was present at M.V.'s birth and had signed documentation stating he was M.V.'s father, the court also declared R.V. to be M.V.'s presumed father pursuant to section 7573.

In its April jurisdiction and disposition report, the Agency stated that Mother told its social worker that when E.T. and M.D. got scared at her home in February, they came into the bedroom and lay on the full-size bed in between her and Stepfather. E.T. was lying next to Stepfather and M.D. was lying next to her. Mother denied that Stepfather did anything to either girl. Stepfather told an Agency social worker that he had been caring for M.V. for six years and thought of him as a son, and not as a stepson. He denied the allegations made against him by E.T. The Agency stated that the family appeared to have inappropriate boundaries with touching. It was concerned that M.V. had acted out sexually toward peers by inappropriately touching the private parts of two female children on separate occasions. During an incident that occurred after Stepfather moved into the family home, M.V. asked a girl, "Do you want to play the massage game?" and then used his hand to massage her genital area. The Agency noted M.V.'s behavior was similar to the instant allegations against Stepfather rubbing or massaging E.T.'s private area. Based on its investigation, the Agency remained concerned that M.V. was at risk of being sexually abused if returned home in an unchanged environment. The Agency recommended that the court find the petition's allegations true, declare M.V. a dependent of the court, and remove M.V. from Mother's custody.

At the initial jurisdiction and disposition hearing in late April, the Agency's counsel informed the court that Stepfather wanted to participate in the hearing. Pursuant to Mother's request, the court set a contested jurisdiction and disposition hearing for late June.

In June, Stepfather filed a request to be found a presumed father of M.V. pursuant to section 7611, subdivision (d) (§ 7611(d)). In particular, he argued that he had lived with M.V. for six years and had developed a very strong bond with him. He further argued that he had held out M.V. as his natural child and had, in effect, become M.V.'s primary father figure. M.V. called him "Dad" and he called M.V. "son." He also argued that the sexual misconduct alleged against him did not automatically disqualify him from presumed father status, but was just one factor for the court to consider, and, on balance, he should be found to be M.V.'s presumed father.

In its early June addendum report, the Agency stated that in May Mother told its social worker that the alleged abuse by Stepfather could not have occurred because she was always present in the home when E.T. was there. Mother initially stated the children were lying on their bed, but then changed her statement to say they were sitting on the bed. Mother also stated that she had been taking a non-protective parent sexual abuse class and that Stepfather had moved out of the home. However, Mother continued to deny, and lacked insight into, the abuse allegations.

At the June pretrial status conference, counsel for Stepfather requested that Stepfather be elevated to presumed father status. The court ordered that Stepfather's request would be considered on the date set for the contested jurisdiction and disposition hearing.

In its late June addendum report, the Agency stated that Stepfather told its social worker that he had moved out of the family home. He had not engaged in any services to mitigate the Agency's safety concerns for M.V., stating: "No[,] I am not a sex addict or sex offender, I never molested anybody." The Agency remained concerned about the allegations of sexual abuse by Stepfather that occurred in the family home and that he was refusing to engage in services to mitigate its concerns. The Agency stated that E.T. had maintained her statements regarding the alleged sexual abuse in all settings and provided details of the abuse that a child of her age would normally not have knowledge of unless exposed to it.

On June 24, prior to the contested jurisdiction and disposition hearing, the court heard arguments of counsel on, and then denied, Stepfather's request to be named a third parent pursuant to section 7612(c). Noting that R.V. had previously been named a presumed parent and that Stepfather had "taken [M.V.] under his wing" and held M.V. out as his own child, the court found "it is clear that the requirements under [section] 7611(d) [for presumed father status] have been met." Having found that Stepfather was a presumed father under section 7611(d), the court then proceeded to the next question of whether Stepfather should also be declared a third parent pursuant to section 7612(c). The court noted that Stepfather's alleged abuse of E.T. "at this point [was] less than clear to the court" and it had not yet conducted the jurisdictional hearing. The court noted that the alleged victim of Stepfather's abuse was not M.V. or a sibling, but was instead a third party in the home, thereby "muddl[ing] the picture somewhat." It further noted that Stepfather denied the sexual abuse allegations and stated that he does not need sex addiction classes or other therapy, thereby indicating "he's not willing to go the extra mile." The court denied Stepfather's request to be declared a third

7

parent, stating: "[W]hen this court considers all the factors that are before this court, this court does find that recognizing Mother and [R.V.] as the only two parents [of M.V.] would not be detrimental to [M.V.]" under section 7612(c).

After denying Stepfather's request, the court then conducted the contested jurisdictional hearing and found, by a preponderance of the evidence, that the petition's allegations were true and declared M.V. a dependent of the court. The court then continued the hearing until June 28 for the contested disposition hearing.

At the June 28 continued hearing, the court adopted the Agency's dispositional recommendations and placed M.V. with Mother on the condition that Stepfather not reside in the home and that Mother not facilitate contact between Stepfather and M.V. The court also ordered that M.V. be allowed liberal supervised visits with Stepfather.

Stepfather and M.V. timely filed notices of appeal, challenging the order denying Stepfather's request to be declared a third parent pursuant to section 7612(c), and amended notices of appeal challenging, in addition, the subsequent dispositional order.[2]

---

[2] As stated above, we deem the appeals abandoned to the extent the appellants challenge the dispositional order based on their omission of any substantive briefing or legal argument showing the juvenile court's dispositional order was erroneous.

DISCUSSION

I

*Applicable Legal Standards for Presumed Fathers and Third Parents*

A

   *Presumed fathers.* "Dependency law recognizes three types of fathers: presumed, alleged, and biological." (*In re M.Z.* (2016) 5 Cal.App.5th 53, 63 (*M.Z.*).) Presumed father status ranks the highest because only presumed fathers are entitled to appointed counsel and reunification services. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801; *In re Zacharia D.* (1993) 6 Cal.4th 435, 451.) "The Uniform Parentage Act (UPA) (§ 7600 et seq.) 'provides the framework by which California courts make [parentage] determinations. (§ 7600, subd. (b).)' " (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1309 (*L.L.*).) "A person qualifies as a natural parent either by giving birth or by meeting one of the applicable statutory methods for being adjudged a natural parent. (§ 7610, subd. (a).) Section 7611 sets forth several rebuttable presumptions through which a person may be presumed to be a natural parent (i.e., 'a presumed parent' or 'presumed father')." (*M.M. v. D.V.* (2021) 66 Cal.App.5th 733, 741 (*M.M.*).) One such rebuttable presumption applies when "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." (§ 7611(d).) Presumed father status under section 7611(d) "may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).) "Biological fatherhood does not, in and of itself, qualify a man for presumed father status under section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, rather than any biological connection. [Citation.] [¶] Section 7611 also recognizes two other grounds for qualification as a

9

presumed father that are outside of the [UPA]. These are an executed voluntary declaration of paternity (§ 7570 et seq.) and the so-called conclusive presumption of paternity ([citation]; § 7540), which dictates the finding that a mother's husband is her child's father, provided the mother and her husband were married and cohabiting when the child was conceived." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018.) In addition, "an unmarried biological father may, under narrow circumstances, assert constitutional paternity rights, even though he does not qualify under any of the presumptions listed in section 7611." (*Ibid.*)

B

*Third parents.* "As a general rule, ' "there can be only one presumed father." ' " (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1086 (*Donovan*).) However, the Legislature enacted section 7612(c), effective in 2014, which statute allows a court to recognize more than two parents for a child in an appropriate action. (Stats. 2013, ch. 510, § 4 & ch. 564, § 6.5.) Section 7612(c) provides:

> "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that *recognizing only two parents would be detrimental to the child*. In determining detriment to the child, *the court shall consider all relevant factors*, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage." (Italics added.)

10

Section 7612(c) "allows a court to recognize three parents only in 'rare cases' where a child truly has more than two parents." (*Donovan,* at pp. 1086-1087.) Section 7612(c) requires a court to find an existing, rather than potential, relationship between the putative third parent and the child, such that recognizing only two parents would be detrimental to the child. (*Id.* at p. 1092.)

"As stated in [section 7612(c)], only a person 'with a claim to parentage' is eligible to be a third parent. Thus, not only must a person seeking to become a third parent show that it would be detrimental to the child to have only two parents, the putative third parent must meet the preliminary hurdle of establishing that he or she qualifies as a presumed parent. [Citation.]" (*M.M.*, *supra*, 66 Cal.App.5th at p. 743.) "[A] court considering a request for status as a third parent under [section 7612(c)] should initially determine whether or not a person seeking status as a third parent can establish a claim to parentage under the [UPA]. Such an existing parent-child relationship is necessary before determining if recognition of only two parents would be detrimental to the child." (*M.Z.*, *supra*, 5 Cal.App.5th at p. 66.) Under section 7612(c), "the ultimate focus [is] on whether it would be detrimental to the child to have only two parents, not on whether it is in the putative parent's interest to obtain third parent status." (*M.M.*, at p. 746.) "[T]he question is not whether it would be detrimental to the child if a third parent *was added*, but rather whether it would be detrimental to the child *to have only two parents*." (*Ibid.*) Therefore, section 7612(c) does not allow a court to grant third parent status based on a finding the child may receive some benefit from having a third parent. Rather, to grant a putative parent third parent status, the court must find it would be detrimental to the child

11

to have only two parents (i.e., that the child would suffer detriment unless third parent status were granted).  (§ 7612(c).)

C

*Substantial evidence standard of review.*  On appeal, "we review factual findings regarding parentage under either section 7611 or section 7612 for substantial evidence. [Citations.]" (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64.)  In applying the substantial evidence standard of review, "[w]e view the evidence in the light most favorable to the ruling, giving it the benefit of every reasonable inference and resolving all conflicts in support of the judgment. [Citation.]  We defer to the trial court's credibility resolutions and do not reweigh the evidence.  [Citation.]  If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling.  [Citation.]" (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 780 (*R.M.*).)  Alternatively stated, we must affirm an order that is supported by substantial evidence even if other evidence, or other inferences from the evidence, would have supported a contrary finding.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 168 (*N.M.*); *In re Manuel G.* (1997) 16 Cal.4th 805, 823.)  On appeal, the appellant has the burden to show there is insufficient evidence to support the juvenile court's order.  (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103; *N.M.*, at p. 168.)

II

*Substantial Evidence Supports Juvenile Court's Order Denying Stepfather's Request for Section 7612(c) Third Parent Status*

Stepfather and M.V. contend the juvenile court erred by denying Stepfather's request to be declared a third parent under 7612(c) because

there is insufficient evidence to support its underlying finding that it would not be detrimental to M.V. to have only two parents (i.e., Mother and R.V.).

A

Stepfather and M.V. initially argue that the juvenile court found that Stepfather was a presumed father under section 7611(d), but then found that presumption was rebutted by a substantial risk of sexual abuse of M.V. by Stepfather based on his alleged sexual abuse of E.T. However, the premise of their initial argument is ill-founded. The reporter's transcript for the June 24, 2021 hearing, as discussed and quoted in pertinent part above, shows the court found that Stepfather had satisfied his burden to prove he was a presumed father under section 7611(d). Specifically, the court found that Stepfather had "taken [M.V.] under his wing" and held M.V. out as his own child and further found "it is clear that the requirements under [section] 7611(d) [for presumed father status] have been met." The court then proceeded to the next question of whether Stepfather should also be declared a third parent pursuant to section 7612(c), found that M.V. would not suffer detriment if he had only two parents, and denied Stepfather's request to be declared a third parent.

There is nothing in the reporter's transcript for that hearing showing the court, either expressly or implicitly, found that Stepfather's presumed father status under section 7611(d) was rebutted by the allegations of his sexual abuse of E.T. or otherwise. To the extent the court discussed and considered the allegations of sexual abuse of E.T. by Stepfather, the reporter's transcript shows the court did so in the context of deciding the section 7612(c) detriment question, as discussed below, and *not* the question of whether Stepfather's presumed father status under section 7611(d) was

13

rebutted. Likewise, there is nothing in the clerk's transcript for the June 24, 2021 hearing showing that the court, either expressly or implicitly, found that Stepfather's presumed father status under section 7611(d) was rebutted. Rather, the clerk's transcript simply states that the court denied Stepfather's request "to be elevated as a presumed father [*sic*] pursuant to [section] 7612(c)." That statement does not reference section 7611(d), much less set forth any finding that Stepfather's section 7611(d) presumed father status was rebutted. Because the record clearly shows the court found Stepfather met the requirements to be a presumed father under section 7611(d), we need not, and do not, discuss the initial argument on appeal that there was insufficient evidence to support a finding that Stepfather's section 7611(d) presumed father status was rebutted.

B

Stepfather and M.V. next argue that there is insufficient evidence to support the court's finding that M.V. would not suffer detriment if he had only two parents and, based thereon, its order denying Stepfather's request to be declared a third parent under section 7612(c). Based on our review of the record, we disagree.

Having found that Stepfather met his preliminary burden of showing he was a presumed father under section 7611(d), the court then correctly proceeded to address the ultimate question under section 7612(c) of whether M.V. would suffer detriment if he had only two parents (i.e., Mother and R.V.) and therefore Stepfather should be declared a third parent. (*M.Z.*, *supra*, 5 Cal.App.5th at p. 66.) Stating that it had "*consider*[ed] *all the factors*," the court found that M.V. would not suffer detriment if he had only two parents and denied Stepfather's request. (Italics added.) By considering

14

all the factors, the court presumably complied with section 7612(c)'s directive that a court "shall *consider all relevant factors*" when determining detriment to the child. (Italics added.) Accordingly, the relevant factors the court presumably considered included the ample evidence that Stepfather treated M.V. as his own son and that they loved each other. In particular, the court considered Stepfather's declaration that was submitted in support of his initial section 7611(d) request to be found a presumed father. In his declaration, Stepfather described the length and nature of his close relationship with M.V. He moved into the family home in 2015 and since then his relationship with M.V. had "grown exponentially." M.V. called him "Dad" and he called M.V. "son." Stepfather and M.V. had a nightly bedtime routine during which Stepfather would tell M.V. that he loved him "with all his heart, no matter what, forever and always." Stepfather talked with M.V. about his school activities, his friends, and his feelings and gave him encouragement. Stepfather took M.V. to school each morning (before the COVID-19 pandemic) and attended almost every performance, recital, show, ceremony, and practice that M.V. had. M.V. went on all the family trips, including vacations to see Stepfather's relatives in Texas. Stepfather concluded his declaration, stating: "[M.V.] is my son, my boy, and I am his Dad!"

In addition, the court presumably considered all the information in the Agency's reports, which included evidence on the allegations that Stepfather sexually abused E.T. Without repeating the details of those allegations as discussed above, E.T. consistently told M.D.'s mother, police, and a forensic interviewer that after Mother and M.D. fell asleep, Stepfather, who was lying next to E.T. in bed, rubbed her vagina over her clothing, kissed her on the lips several times, and told her to keep it a secret. The Agency stated that

15

E.T. had maintained her statements regarding the alleged sexual abuse in all settings and provided details of the abuse that a child of her age would normally not have knowledge of unless exposed to it. The Agency also reported that Stepfather's former wife stated that he was a sex addict, had an "unnatural" appetite for sex, and had cheated on her with both men and women. He participated in a 12-step program for sex addiction, but had not completed it. The Agency was also concerned that M.V. had previously acted out sexually toward peers by inappropriately touching the private parts of two female children on separate occasions. During an incident that occurred after Stepfather moved into the family home, M.V. asked a girl, "Do you want to play the massage game?" and then used his hand to massage her genital area. The Agency noted M.V.'s behavior was similar to the instant allegations against Stepfather rubbing or massaging E.T.'s private area. The Agency stated it was concerned that M.V. would be at risk of being sexually abused if returned home in an unchanged environment. In its late June 2021 addendum report, the Agency stated that Stepfather told its social worker that he had not engaged in any services to mitigate the Agency's safety concerns for M.V., stating: "No[,] I am not a sex addict or sex offender, I never molested anybody." The Agency remained concerned about the allegations of sexual abuse by Stepfather that occurred in the family home and that he was refusing to engage in services to mitigate its concerns.

Based on its consideration of all the relevant factors, including the evidence discussed above, the juvenile court could reasonably find that, despite the ample evidence of the close bond between Stepfather and M.V., Stepfather nevertheless posed a risk of sexual abuse to M.V. and therefore it would not be detrimental to him to have only two parents, Mother and R.V., within the meaning of section 7612(c). Based on our review of the evidence

16

discussed above, we conclude there is substantial evidence to support that finding by the court under section 7612(c). To the extent Stepfather and M.V. argue that there is evidence that would have supported a finding by the court that M.V. would suffer detriment within the meaning of section 7612(c) if Stepfather were not declared a third parent, they misconstrue and/or misapply the substantial evidence standard of review. As discussed above, in applying the substantial evidence standard of review, we view the evidence in the light most favorable to the court's finding, make all reasonable inferences from the evidence, and resolve all conflicts in support of the finding. (*R.M.*, *supra*, 233 Cal.App.4th at p. 780.) Furthermore, we must defer to the juvenile court's credibility determinations and do not reweigh the evidence. (*Ibid.*) Accordingly, we must affirm an order that is supported by substantial evidence even if other evidence, or other inferences from the evidence, would have supported a contrary finding. (*Ibid.*; *N.M.*, *supra*, 197 Cal.App.4th at p. 168.) In concluding there is substantial evidence to support the juvenile court's section 7612(c) no-detriment finding, we reject, in particular, Stepfather's argument that the court erred by placing more weight on the evidence of his alleged sexual abuse of E.T. than on the evidence of "the unequivocally bonded relationship that he and [M.V.] shared" and, based on that weighing error, finding M.V. would not suffer detriment if he were not declared a third parent under section 7612(c).

Finally, none of the cases cited by the parties are factually apposite to this case or otherwise persuade us to reach a contrary conclusion. (See, e.g., *In re Alexander P.* (2016) 4 Cal.App.5th 475 (*Alexander*); *In re T.R.* (2005) 132 Cal.App.4th 1202 (*T.R.*); *Donovan, supra*, 244 Cal.App.4th 1075; *M.M.*, *supra*, 66 Cal.App.5th 733; *L.L.*, *supra*, 13 Cal.App.5th 1302.) In particular, *Alexander* is inapposite because the juvenile court in that case, unlike the

court in this case, made a finding that the child *would*, in fact, suffer detriment under section 7612(c) if he had only two parents. (*Alexander*, at pp. 480, 484.) The court in *Alexander* concluded, unsurprisingly, that there was substantial evidence to support the juvenile court's finding of detriment under section 7612(c), despite evidence of domestic violence by the putative third parent against the child's mother. (*Id.* at p. 498.) *T.R.* is inapposite to this case because it was issued prior to the enactment of section 7612(c) and involved only a challenge to an order denying a stepfather presumed father status under section 7611(d). (*T.R.*, at pp. 1206, 1208.) In that case, we concluded there was substantial evidence to support the juvenile court's finding that the stepfather's history of sexual molestation of young teenage girls, his status as a registered sex offender, and his sexual molestation of his 10-year-old stepdaughter rebutted the presumption that he was a presumed father of that stepdaughter under section 7611(d). (*Id.* at pp. 1208, 1211-1212.) In affirming the order, we noted, in particular, that the stepfather's conduct "was antithetical to a parent's role and was a blatant violation of parental responsibilities." (*Id.* at p. 1211.) Finally, in each of *Donovan*, *M.M.*, and *L.L.*, the putative third parent, unlike the Stepfather in this case, lacked an *existing* parent-child relationship and therefore the child could not suffer any detriment under section 7612(c) if the child were to have only two parents. (*Donovan*, at pp. 1079, 1092-1094; *M.M.*, at pp. 737, 748; *L.L.*, at pp. 1316-1317.) Because none of the cited cases are factually apposite to this case, we do not rely on their holdings in reaching our conclusion above that there is substantial evidence to support the juvenile court's finding and order denying Stepfather's request to be declared a third parent under section 7612(c).

## DISPOSITION

The orders are affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

DO, J.