Filed 4/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANTHONY MARTINEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SHABNAM VAZIRI et al.,<br><br>Defendants and Respondents. | H041758<br>(Santa Clara County<br>Super. Ct. No. 114-CP021388) |

Petitioner appeals the denial of his petition to establish a parental relationship, as a third natural parent, with his three-year-old niece (child). The trial court ruled that petitioner met the statutory criteria of a presumed parent, but found the presumption was rebutted under the recently amended Family Code section 7612, subdivisions (c) and (d).[1] Pursuant to section 7612, subdivision (c), the trial court found that recognizing only two parents—child's mother and biological father (father)—would not be detrimental to child, and therefore ruled that, pursuant to section 7612, subdivision (d), an earlier filed judgment of parentage for child's father rebutted petitioner's presumed parent status. Petitioner contends the trial court misinterpreted the statutory standard for evaluating detriment and thereby abused its discretion in finding there would be no detriment to child in denying petitioner parental status.

We conclude the trial court's determination of no detriment under section 7612, subdivision (c) appears to have derived from an improperly narrow construction of the statutory language, resulting in the trial court's failure to consider all relevant factors

---

[1] Unspecified statutory references are to the Family Code.

under the statute.  Because the rebuttal of petitioner's presumed parent status was contingent on the trial court's evaluation of detriment under section 7612, subdivision (c), we will reverse the order denying the petition and remand for reconsideration.

## I.  STATUTORY FRAMEWORK

The Uniform Parentage Act (UPA), specifically sections 7611 and 7612, governs this action.  The UPA defines the "[p]arent and child relationship" as "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations."  (§ 7601, subd. (b).)  The paternity presumptions of the UPA " 'are driven by state interest in preserving the integrity of the family and legitimate concern for the welfare of the child.' "  (*In re Nicholas H*. (2002) 28 Cal.4th 56, 65 (*Nicholas H*.).)  One purpose of the UPA is "to distinguish those who have demonstrated a commitment to the child regardless of biology and grant them the 'elevated status of presumed [parenthood].' "  (*E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1085.)

Here, the trial court determined petitioner to be a presumed parent of child pursuant to section 7611, subdivision (d), which provides:  "A person is presumed to be the natural parent of a child if the person . . . receives the child into his . . . home and openly holds out the child as his . . . natural child."  (§ 7611, subd. (d).)  Neither side contests this determination on appeal.  The trial court found this presumption was rebutted, however, by clear and convincing evidence under section 7612, subdivisions (c) and (d)—a finding petitioner claims was erroneous for several reasons.

Effective January 1, 2014, section 7612, subdivisions (c) and (d) provide:  "(c) In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child.  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs

2

and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage. [¶] (d) Unless a court orders otherwise after making the determination specified in subdivision (c), a presumption under Section 7611 is rebutted by a judgment establishing parentage of the child by another person." (§ 7612, subds. (c), (d).)

In enacting the current version of section 7612, subdivisions (c) and (d),[2] the Legislature made express findings: "(a) Most children have two parents, but in rare cases, children have more than two people who are that child's parent in every way. Separating a child from a parent has a devastating psychological and emotional impact on the child, and courts must have the power to protect children from this harm. [¶] (b) The purpose of this bill is to abrogate *In re M.C.* (2011) 195 Cal.App.4th 197 insofar as it held that where there are more than two people who have a claim to parentage under the Uniform Parentage Act, courts are prohibited from recognizing more than two of these people as the parents of a child, regardless of the circumstances. [¶] (c) This bill does not change any of the requirements for establishing a claim to parentage under the Uniform Parentage Act. It only clarifies that where more than two people have claims to parentage, the court may, if it would otherwise be detrimental to the child, recognize that the child has more than two parents. [¶] (d) It is the intent of the Legislature that this bill will only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents." (Stats. 2013, ch. 564, § 1.)

---

[2] The amendments to section 7612, subdivisions (c) and (d) were part of a broader senate bill (Sen. Bill No. 274) that amended various sections of the Family Code.

3

## II.     TRIAL COURT PROCEEDINGS

Petitioner initiated proceedings to establish parentage of child pursuant to sections 7611, subdivision (d) and 7612, subdivision (c).  Petitioner is child's biological uncle.  Mother is child's mother and the respondent.  Father is petitioner's half-brother.  The court held an evidentiary hearing at which petitioner and mother were present.  Father was incarcerated at the time of the hearing and attended telephonically.

The following facts, established at the hearing on August 20, 2014, are not in dispute.  Petitioner and mother had been in a relationship for many years when mother conceived child.  A separate paternity action, brought by mother, and genetic test established that father was child's biological father.  Father abandoned mother during her pregnancy.  He has been incarcerated for extended periods since child's birth; in total he has had approximately seven or eight hours of contact with child.  Mother has sole legal and physical custody of child, with no visitation to father.  An unresolved Child Protective Services (CPS) case, which arose out of the brief window of contact between father and child, remained open as of the evidentiary hearing on petitioner's parentage action.

Aware that he was not the father, petitioner determined to raise child as his daughter.  During mother's pregnancy, petitioner accompanied her to prenatal appointments as well as parenting and birthing classes.  Petitioner was present and cut the umbilical cord at child's birth in November 2012.  Petitioner moved in with mother immediately after child's birth and lived with mother and child for the first six months, during which time petitioner helped care for child.  Petitioner testified that he considered himself to be "[i]n every way father.  I helped feed, took turns with the middle of the nights, waking up, bonding, singing, goodnights."  In May 2013, petitioner moved to his own apartment but continued to see child on average three days and two to three nights per week.  Petitioner held child out as his daughter to all but a small set of family and friends who knew he was not the biological father.

4

In November 2013, when child was about one year old, petitioner spanked child during a visit, leaving bruises. Petitioner testified about the incident: "I made the mistake to spank my daughter. . . . I was completely unaware of my strength or her sensitivity. A few bruises were left, and . . . quite an emotional scar on me once I saw the pictures. And CPS was involved due to a mandated reporter."

Mother noticed the bruising and called her counselor, who contacted to CPS. CPS removed child from mother for several days. In the resulting investigation, CPS found petitioner had caused the bruises (which he admitted) and had tested positive for illegal substances. CPS returned child to mother's custody subject to a case plan that prohibited contact between petitioner and child for six months. Mother and petitioner adhered to the plan, during which time child lived exclusively with mother. After the six-month no contact period and consultation with therapists, mother allowed petitioner to resume visitation in range of five to 20 hours each week. Petitioner's visitation with child was ongoing at the time of the trial court hearing. Mother and petitioner also have stayed in touch with a parenting coach or therapist for guidance on raising child.

Mother testified that she "would agree that [petitioner] has been the male role model in [child's] life."[3] "[Child] does refer to him as father," she stated. Mother was aware that petitioner had "issues including substance abuse" but "believed he was clean and sober" until the November 2013 incident, when she became aware he had relapsed. As of the hearing, mother believed petitioner had regained and maintained his sobriety.

Regarding the parentage action, mother's testimony was that "she absolutely acknowledges [petitioner's] involvement and support of [child] in numerous ways, but is in a position where she is concerned that if she were to absolutely consent to this proceeding, that . . . might affect her custodial rights in the future." Due to the November

---

[3] Portions of the referenced testimony were statements made by mother's counsel on mother's behalf, by offer of proof. Mother was present for the testimony.

2013 incident, which left "remarkable bruises" on child, CPS was "very clear . . . about the parameters of petitioner's involvement," causing mother to feel "very torn" and afraid that even though "she has continued to engage with the child therapist . . . in hopes that she's doing everything right by allowing [child] to resume a relationship [with petitioner], . . . at some point, some social worker can come into this picture and say, you know 'you shouldn't have been allowing for that, so we're taking the child away.' " Regardless of the outcome of the parentage proceeding, mother had "no intention" of keeping child from petitioner and would continue to allow visitation as long as he remained drug free.

Father did not testify or interpose a viewpoint during the proceeding, except to disclaim at one point petitioner's statement that father had shown no interest in being involved with child as a father. Petitioner testified on the subject of detriment if he were denied parentage. He stated it was obvious to anyone who had seen them together "that [child] recognizes me as dad . . . that she asks for me up to several times a day in order to spend time together." Petitioner described their bond as "an emotional imprint of father and daughter," which would suffer if he did not have "full authority to be there . . . and have me legally and safely protect [child] if something were to go wrong if I don't have those parent rights." Petitioner also testified that if child was not a "proper heir," he would not be able to name her for benefits, such as life insurance, and that if mother became incapacitated or unable to care for child, she would have "no father figure to go with" and would be at risk of entering the foster system, "which is, number one, the most dangerous thing ever in all of our opinions as far as I've been told."

Mother testified she believed there would be no detriment if the court denied the parentage petition, because she had not and did not intend to withhold "child from the petitioner." On cross-examination, mother acknowledged that given child's ties to petitioner, in that "she knows [him] as her father . . . in an emotional sense," it would be detrimental if that were taken from her. Mother also acknowledged that if something

6

happened to her, it would be detrimental to child if she went back to CPS, but stated she did not know what would happen and "would image [*sic*] it would be an uncle or a grandmother or sister."

In closing argument, petitioner, who was self-represented, objected that testimony about his purported drug use or relapse comprised "accusations and hearsay" and should not have been presented.[4] He argued the evidence presented by both sides showed he had satisfied the test to be determined a presumed parent pursuant to section 7611, subdivision (d). He pointed to the responsibilities he would have if granted parentage, including financial, and the fact that as a parent, he would be held accountable for any potential mistakes. He also argued that under the statutory scheme, being named a third parent would not impinge upon the rights of child's mother or biological father.

The trial court stated its findings on the record. The court first determined that petitioner satisfied his burden of proof under section 7611, subdivision (d) to establish himself as a presumed parent of child. The court then made findings under the clear and convincing standard of section 7612, rebutting the presumption. The court found that recognizing only two parents, mother and father, would not be detrimental to child under section 7612, subdivision (c). The court reasoned there would be no harm from "removing the child from a stable placement," because that removal had already occurred "some time ago." Based on this finding, the court concluded that pursuant to section 7612, subdivision (d), petitioner's presumption of parentage was rebutted by the earlier judgment establishing father as a natural parent.

The trial court also made findings on specific factual issues. It credited mother's testimony that she would continue to support the relationship between petitioner and

---

[4] Petitioner argued that the doctrine of estoppel precluded mother from raising the drug use issue, because neither CPS nor the district attorney sought to prosecute him and thus that issue had "already been decided."

child.  It noted the possibility of consequences adverse to child's best interest if the juvenile court were to consider mother's actions to be inconsistent with the best interest of the child.[5]  And it deemed unpersuasive petitioner's assertions regarding his ability to name child as an heir or beneficiary, "inasmuch as people can name whoever they want to as beneficiaries" and can execute wills naming anyone to be heir of the estate.  It similarly found unpersuasive the contention that child might be left without a parent if something were to happen to mother, because mother could name a legal guardian for child, assuming father was not then considered a fit parent to have custody.

The court denied petitioner's petition to be recognized as a natural, third parent of child.  Petitioner timely appealed the court's ruling following entry of the written order.

### III.    DISCUSSION

#### A. THE TRIAL COURT'S INTERPRETATION OF "STABLE PLACEMENT" UNDER SECTION 7612, SUBDIVISION (C) AND CONSIDERATION OF "ALL RELEVANT FACTORS"

Petitioner contends the trial court erred in interpreting the statutory mandate to consider the "harm of removing the child from a stable placement" as referring only to the living arrangement and not to the visitation or informal custody relationship between petitioner and child.  By narrowly interpreting "stable placement," petitioner contends the trial court failed to consider "all relevant factors" in evaluating the detriment child would suffer if she were removed from the stable relationship she has with petitioner.  Because the issue presented involves the interpretation of a statute and the application of that statute to undisputed facts, it is subject to this court's independent review.  (*City of*

---

[5] The court's statements do not reflect a clear finding on this issue, noting only that it had "consider[ed] the potential risk of custody to the mother if she were to take actions that the juvenile court might consider inconsistent with the best interests of the child given the prior incidents involving CPS and the petitioner. [¶] Although, that might not be detrimental action on the part of the mother, it certainly could be potentially . . . adverse to the overall best interests of the child."

*Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212, citing *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611.)

Mother, appearing in propria persona without assistance of counsel, submitted a respondent's brief stating her concerns regarding the petition and providing further factual development on the relationship between the parties and her actions on behalf of child since the trial court's ruling. This response contains no citation to the record and appears to refer mainly to facts outside of the record or that occurred after the fact. Under California Rules of Court, all appellate briefs must "[s]upport any reference to a matter in the record by a citation to the . . . record . . . ." (Cal. Rules of Court, rule 8.204(a)(1)(C).) It is also well-established that "when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) Closely related is the rule that " 'contentions not raised in the trial court will not be considered on appeal.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 406, quoting *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468 [waiver rule founded on considerations of fairness and efficiency in administration of the law].)

Mother, as a self-represented party, is not exempt from these rules. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*) [appellant representing himself in pro per is not exempt from procedural rules on appeal]; *Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [party appearing in pro per "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys"].) Inasmuch as the factual assertions in mother's

response do not comply with these procedures, this court will disregard them.[6] (See *In re S.C.*, *supra*, 138 Cal.App.4th at p. 407 [contention unsupported by record citation will be deemed forfeit]; *Nwosu*, *supra*, at p. 1246 [failure to comply with appellate rules will forfeit those arguments].)  To the limited extent the concerns relayed in mother's brief may be considered argument pertaining to an issue clearly identifiable in the record on appeal, we will consider those points.

In finding there would be no detriment to child based on "the harm of removing the child from a stable placement" under section 7612, subdivision (c), the trial court stated "that [removal] has already occurred well over—well, back in May of 2013, or perhaps that was November of 2012, some time ago. . . .  [C]ertainly the Court's ruling today would not be removing the child from that environment."  Petitioner contends these references are to the fact that petitioner moved out of mother's house in May 2013, or that he was not permitted to see child for six months starting in November 2013.[7] Petitioner argues this interpretation of the statute was flawed and contrary to the statutory purpose of the presumed parent presumptions, because it is the child's relationship with the presumed parent, not simply their living arrangement, that must be considered.  (See, e.g., *R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 780-781 [affirming parentage judgment for the mother's former boyfriend, who lived out of state, based on demonstrated involvement with and care and affection for the child].)

The phrase "stable placement" is not defined in the Family Code, nor do any published cases interpret this recent addition to section 7612.  We need not attempt to construe "stable placement" as a standalone phrase, however, because as a matter of basic

---

[6] Our inability to consider new and unsupported facts in the appellate context does not prejudice mother from seeking to introduce any relevant facts at the hearing on remand.

[7] The trial court likely misspoke when it stated "November of 2012" instead of November 2013, as November 2012 is when child was born.

statutory interpretation, the words must be construed in context. The "fundamental task" of the court in any act of statutory interpretation "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Estate of Griswold* (2001) 25 Cal.4th 904, 910.) We start " 'by examining the statutory language, giving the words their usual and ordinary meaning.' " (*Id.* at p. 911.) The plain "meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

In the amended section 7612, subdivision (c), the phrase "harm of removing the child from a stable placement" is in reference to the relationship "with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 7612, subd. (c).) Any consideration of the child's "stable placement" therefore must be in relation to the ongoing source or sources of fulfillment of the child's physical and psychological needs for care and affection. Properly viewed in the context of the UPA provisions governing the parentage presumptions, these sources of care and affection may arise out of the child's living arrangement, but may equally arise out of an alternative arrangement. Thus, in *R.M. v. T.A.*, the appellate court affirmed the unrebutted presumption of parentage for the mother's boyfriend, even though he had never lived with the young child and the mother had conceived with the stated intent to raise the child as a single mother. (*R.A. v. T.A.*, *supra*, 233 Cal.App.4th at pp. 780-781.) The appellate court explained that although the mother "may have initially intended to raise Child as a single parent, . . . during the first two years of Child's life Mother's relationship with RM developed such that RM, with Mother's full support, *undertook a parental role and established a parent-child relationship with Child*." (*Id.* at p. 781, italics added.)

11

The critical distinction is not the living situation but whether a parent-child relationship has been established.[8] " '[T]he premise behind the category of presumed [parent] is that an individual . . . has demonstrated a commitment to the child and the child's welfare.' " (*Jason P. v. Danielle S.* (2014) 226 Cal.App.4th 167, 177, quoting *In re T.R.* (2005) 132 Cal.App.4th 1202, 1211-1212.) As we have explained in the dependency context, even a man "with no biological connection to the child, no marital connection to the mother, and no way to satisfy the statutory presumption of paternity may nevertheless be deemed a presumed father" *if* he can prove "an existing familial relationship with the child," a bond the likes of which " 'should not be lightly dissolved.' " (*In re D.M.* (2012) 210 Cal.App.4th 541, 554, quoting *In re P.A.* (2011) 198 Cal.App.4th 974, 980; *Nicholas H.*, *supra*, 28 Cal.4th at p. 65.) It is this familial relationship with a parent, who has fulfilled the child's needs for care and affection for a considerable amount of time, that modifies the phrase "stable placement" and that provides the context for the trial court's evaluation of detriment under section 7612, subdivision (c).

This interpretation of "stable placement" is consistent with a recent decision of the Fourth District interpreting " 'an appropriate action' " (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1090 (*Donovan L.*)) within the meaning of section 7612, subdivision (c) to be "one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.*, *supra*, at p. 1091.) *Donovan L.* arose out of a dependency proceeding in which the juvenile court ruled that the child, "DJ," had

---

[8] We note that California courts have used a similar set of terms in the juvenile dependency context when determining a "de facto parent." (See, e.g., *In re B. G.* (1974) 11 Cal.3d 679, 692, fn. 18 [the term "de facto parent" refers to "that person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care"].)

three parents under section 7612, subdivision (c) despite having found that the putative third parent, "David," who was DJ's biological father and a presumed father under section 7611, subdivision (d), had not yet developed a parent-child relationship with DJ. (*Donovan L.*, *supra*, at pp. 1078-1079.) On appeal, the court examined the language of section 7612, subdivision (c) and related legislative history, noting the "detriment to the child" standard protects from "the loss of an *existing* relationship with a nonparent." (*Donovan L.*, *supra*, at p. 1089.) The court further noted that courts making parentage determinations under the UPA "seek to protect *existing* relationships rather than foster *potential* relationships." (*Id.* at p. 1091.) Because David and DJ did not have a parent-child relationship at the time of the contested disposition hearing on parentage, the court found the juvenile court's determination of detriment was error: " '[A]n appropriate action' for application of section 7612, subdivision (c) requires a court to find an existing, rather than potential, relationship between a putative third parent and the child . . . ." (*Id.* at p. 1092.)

Here, the record established petitioner's existing parental relationship and ongoing role in child's care, even after the November 2013 incident and intervention by CPS. From birth until six months old, petitioner lived with mother and helped care for child. For the next five to six months, between May and November 2013, petitioner cared for child on average three days and two to three nights per week. After the six-month no contact period, petitioner resumed visitation several times a week, between five and 20 hours, which has continued and which mother testified she has no intention of stopping unless there is indication of relapse. Mother's trial brief expressly credited petitioner with being the male figure in child's life since her birth, and stated that petitioner has provided financially for child and assisted mother in caring for her. Mother further testified that petitioner was "the male role model" in child's life, that child knew him as her father "in an emotional sense," and that he supported child in numerous ways.

13

We view the trial court's finding that removal "already occurred" and that the court's ruling "would not be removing the child from that environment" to be incongruous with the undisputed evidence of petitioner's ongoing role in caring for child and her emotional bond to him as a father. (See § 7612, subd. (c) [court shall consider the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time].) We conclude that the trial court appears to have misconstrued the "harm" factor of section 7612, subdivision (c), interpreting the statutory language as pertaining primarily or solely to child's living arrangement, and in so doing, failed to consider "all relevant factors" when determining detriment to the child.

## B. THE TRIAL COURT'S FINDING OF NO DETRIMENT IN DENYING THIRD PARENT STATUS TO PETITIONER BASED ON TWO EXISTING, NATURAL PARENTS

Petitioner contends the trial court abused its discretion in finding that recognizing only two parents would not be detrimental to child, leading to the rebuttal of the presumption of parentage. Whether a particular case is " 'an appropriate action' in which to rebut the presumption of presumed parenthood . . . is generally a matter within the discretion of the superior court." (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 122 (*Elisa B.*).) However, "[a] discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124-1125 (*Mark T.*) citing *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436.)

Because the trial court's finding pursuant to section 7612, subdivision (c) appears to have rested on incomplete consideration of the legal criteria set by the statute, we will remand the matter for reconsideration. (*Mark T.*, *supra*, 194 Cal.App.4th at pp. 1131-1132 [trial court to reconsider custody on remand after misapplying pertinent

14

legal standard in evaluating relocation request].)  We address an additional point raised in petitioner's appellate briefs to provide guidance on remand for the evaluation of detriment pursuant to section 7612, subdivision (c) and the application of subdivision (d) in rebutting the paternity presumption.

Petitioner argues the court's findings under section 7612, subdivisions (c) and (d) were inconsistent with California's policy in favor of recognizing two parents for a child. Petitioner essentially contends that father's involuntary adjudication as the biological father of child is insufficient to serve the statutory purpose and state interest behind the two-parent interest, because father never sought to be recognized as child's presumed father, has had no parental relationship with child, and has no legal or physical custody, or visitation.  He argues that if anything were to happen to mother, it is unlikely father would willingly take custody of child—if he were not incarcerated at the time—or that CPS would not prevent him from doing so.  Petitioner contends that in reality, child only has two *real* parents, and one of them is petitioner.

We recognize that ensuring children have two parents is an important policy concern furthered by the UPA.  (*In re D.M.*, *supra*, 210 Cal.App.4th at p. 554.)  In *Nicholas H.*, *supra*, 28 Cal.4th at page 70 and *Elisa B.*, *supra*, 37 Cal.4th at page 123, the California Supreme Court clarified that it is not an appropriate action for rebutting the presumption of parenthood, within the meaning of section 7612, when to do so would leave the children with only one parent.  "By recognizing the value of determining paternity, the Legislature implicitly recognized the value of having two parents, rather than one, as a source of both emotional and financial support, especially when the obligation to support the child would otherwise fall to the public."  (*Elisa B.*, *supra*, at p. 123; see also *Librers v. Black* (2005) 129 Cal.App.4th 114, 123 (*Librers*) ["[W]henever possible, a child should have the benefit of *two* parents to support and nurture him or her"].)  In enacting the current version of section 7612, subdivision (c), the Legislature expanded that notion to recognize that "in rare cases, children have more than

two people who are that child's parent in every way," and in certain rare cases, "a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents." (Stats. 2013, ch. 564, § 1(a), (d).)

We find petitioner's policy argument regarding the preference for child to have two "real" parents is germane to the trial court's evaluation of detriment pursuant to section 7612, subdivision (c), because the statute directs the court to consider "all relevant factors." In this case, one such factor is not only the willingness and availability of one of the parents to take custody of child, if such a need were to arise, but whether a familial relationship exists between that parent and child such that the recognized value of two parents can be fulfilled in a meaningful way. That value may be expressed in the opportunity for financial support and its appurtenant rights and benefits. (See *Elisa B.*, *supra*, 37 Cal.4th at pp. 122-123 [value of two parents as source of financial support, including rights and benefits that otherwise would fall to the public].) And it certainly finds expression in the welfare of the child by assuring stability and continuity of care. (See *Nicholas H.*, *supra*, 28 Cal.4th at p. 65 [state interest in " ' " 'preserving and protecting the developed parent-child . . . relationships which give young children social and emotional strength and stability' " ' "]; *Librers*, *supra*, 129 Cal.App.4th at p. 123 [benefit of two parents "to support and nurture" the child].) Under the circumstances presented here, a meaningful evaluation of potential detriment to the child pursuant to section 7612, subdivision (c), must include a realistic assessment of those parents' respective roles in providing care and support for the child. As the statute dictates, such consideration does not require a finding of unfitness of any of the parents. (§ 7612, subd. (c).)

We do not find a similar assessment is required under section 7612, subdivision (d), because a finding under subdivision (d) follows, if at all, a finding under subdivision (c). (§ 7612, subd. (d).) Whereas subdivision (c) requires consideration *in an appropriate action* and based on *all relevant factors*, which in some instances will

16

include whether "recognizing only two parents" confers the benefits generally associated with establishing two parents for a child, there is no equivalent weighing of factors under subdivision (d). The trial court's inquiry pursuant to section 7612, subdivision (d) is much narrower and only requires the court to determine whether there is clear and convincing evidence of a judgment of paternity. (Cf. *Nicholas H*., *supra*, 28 Cal.4th at p. 63 [distinguishing language of then § 7612 that the parentage presumption " '*may* be rebutted *in an appropriate action* only by clear and convincing evidence' " from language that the presumption "*is* rebutted by a judgment establishing paternity of the child by another [person]"].) Unless the trial court has made a finding of detriment under section 7612, subdivision (c), evidence of a judgment establishing parentage by another person rebuts the section 7611 parentage presumption. (§ 7612, subd. (d).)

Although the trial court correctly applied section 7612, subdivision (d) in this action,[9] it did so based on its preliminary determination under section 7612, subdivision (c). That determination derived from an improper interpretation of the statutory language and failed to account for "all relevant factors" under section 7612, subdivision (c). Accordingly, the trial court's rebuttal finding pursuant to section 7612, subdivision (d) must be reversed.

## IV.    DISPOSITION

The order denying petitioner's request to be deemed a third parent to child is reversed. The matter is remanded for a hearing to reconsider the issue of detriment under Family Code section 7612, subdivision (c) consistent with this opinion, the outcome of which will determine whether the action is an appropriate one for finding that more than two persons with a claim to parentage are parents, or whether petitioner's presumed

---

[9] The parties do not dispute that there is a preexisting judgment establishing father's paternity of child.

17

parent status is rebutted under Family Code section 7612, subdivision (d).  Petitioner is entitled to costs on appeal.


_____
Premo, J.


WE CONCUR:


_____
Rushing, P.J.


_____
Márquez, J.


Martinez v. Vaziri et al.
H041758

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 114-CP021388 |
| Trial Judge: | Hon. Drew C. Takaichi |
| Counsel for Plaintiff/Appellant:<br>Anthony Martinez | O'Reilly Law Office<br>Kathleen O'Reilly |
| Counsel for Defendants/Respondents:<br>Shabnam Vaziri<br>Brad J. Martinez | In propria persona |

Martinez v. Vaziri et al.
H041758