Filed 9/13/23  In re J.F. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.F., a Person Coming Under the Juvenile Court Law. | B318254 (Los Angeles County Super. Ct. No. 21CCJP04847D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE F.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Reversed and remanded with directions.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

---

## I.    INTRODUCTION

Appellant Jose F. is the biological father of J.F. (the child). At the adjudication and disposition hearing, the juvenile court named both Jose F. and I.A., mother M.R.'s husband, presumed fathers of the child.  Father appeals from the order naming I.A. a presumed father.[1]

## II.    BACKGROUND

Mother and I.A. married in November 2019.  They separated at the end of December 2020, and never filed for divorce.

On August 31, 2021, mother told a social worker I.A. was the father of her unborn child.  The child was born in early September 2021.  Although mother named the child after Jose F., she told I.A. the baby was his.  On September 30, 2021, after the

---

[1]    Neither the Los Angeles County Department of Children and Family Services (Department) nor I.A. filed a respondent's brief.  The Department filed a letter explaining it did not file a respondent's brief because it was "generally aligned" with Jose F.'s paternity argument at the adjudication and disposition hearing that he should be named the child's sole presumed father.

child was born, mother again told a social worker that I.A. was the child's father.

On October 15, 2021, the Department filed a Welfare and Institutions Code section 300 petition alleging the child came within the jurisdiction of the juvenile court. The child was placed with I.A.

On October 20, 2021, Jose F. filed a Statement Regarding Parentage of the child stating he believed he was the child's father and requesting the juvenile court enter a judgment of parentage. In support of his request, he stated that he had established parentage by signing a voluntary declaration when the child was born. He requested the court find him the child's presumed parent because the child lived with him since birth; he told family, friends, and co-workers the child was his; he participated in the child's daily care; he provided the child with food, money, and shelter; the child spent time with his family; and the child was bonded with him.

At the October 20, 2021, detention hearing, mother's counsel stated that mother asserted that Jose F. was the child's father and had signed the child's birth certificate. Jose F.'s counsel stated that Jose F. had signed the child's birth certificate and the child was living in his home. Jose F.'s counsel requested the juvenile court declare Jose F. the child's presumed father. The court deferred making a presumed father finding as to Jose F.

I.A.'s counsel requested the juvenile court declare him the child's presumed father as he was married to mother at the time of conception and birth and continued to be married to mother. Also, mother had identified I.A. as the child's father just before and just after the child's birth, I.A. had financially supported

mother throughout her pregnancy, and the child was currently placed with I.A. The court granted I.A.'s request, naming him the child's presumed father.

Mother requested and the juvenile court ordered a DNA test for the child.

The juvenile court found a prima facie case the child was a person described by section 300. The court released the child to I.A.

At the November 23, 2021, adjudication hearing, the juvenile court noted that the DNA test results were not yet available. Mother expressed concern that I.A. was an alcoholic who drank and drove and that his female companion also had an alcohol issue. Mother asked the Department to investigate if the child was safe with I.A.

Jose F. joined mother's concern about and request for a Department investigation of I.A.'s alleged alcohol abuse. He also requested the Department assess him (Jose F.) for placement. Pending receipt of the DNA results, he requested visitation. The juvenile court declined to order visitation for Jose F. and continued the hearing.

The January 14, 2022, DNA test results showed the probability that Jose F. was the child's biological father was 99.99 percent "as compared to an untested, unrelated man of the Hispanic population." Informed of the results, Jose F. told a social worker he wanted to regain custody of the child. He reported that he had not had any visits with the child because I.A. canceled the visits on the days they were scheduled.

When I.A. was informed of the DNA test results, he said he was disappointed; his wife stayed up all night with the child, caring for and being attentive to him; they had built a

4

relationship and bond with the child; he recognized the child as his son; and he wanted legal custody of the child and to be recognized as the child's father as he had "raised him as such."

At the outset of the January 21, 2022, continued adjudication/disposition hearing, counsel for the Department noted that the recent DNA test results showed that Jose F. was the child's biological father and asked the juvenile court to resolve the possible competing claims for presumed father status. I.A.'s counsel stated I.A. requested presumed father status because he openly held himself out as the child's father, he and his family accepted the child into their home, and the child had been released to him since the detention hearing.

Jose F.'s counsel requested the juvenile court find Jose F. to be the child's presumed father because he was the child's biological father, he lived with and provided for mother throughout her pregnancy, a letter from the hospital verified Jose F. signed the child's birth certificate, and the child was only a few months old.

The juvenile court stated that it had reviewed a parentage questionnaire for mother dated October 20, 2021, that identified Jose F. as the child's father and stated Jose F. was present at the child's birth and signed the birth certificate.[2] The questionnaire further stated she and Jose F. were living together and Jose F. held himself out as the child's parent and provided for the child. Mother also indicated she and I.A. were still married.

The Department's counsel stated that Family Code section 7612 (section 7612) permitted the juvenile court to declare both I.A. and Jose F. to be presumed fathers if it would be detrimental

---

[2]     The referenced parentage questionnaire is not a part of the record of appeal.

to the child not to name both presumed fathers.  He argued, however, that it would not be detrimental if I.A. and Jose F. were not both named presumed fathers because I.A. and Jose F. were "in conflict with each other"—I.A. had not permitted Jose F. and mother to visit the child and both I.A. and Jose F. wanted custody of the child.  Also, the child was young and had lived with I.A. only briefly.  The court responded that I.A. had not permitted Jose F. to visit the child because it had not ordered visitation and there was no indication I.A. would deny visitation if ordered.

Counsel for the child agreed with the Department's position that naming two presumed fathers would be inappropriate.  She argued the child was very young and had not been in I.A.'s home for very long.

The juvenile court initially found Jose F. to be the child's presumed father and revoked I.A.'s presumed father status.  Counsel for I.A. objected, arguing the child had lived 75 percent of his life with I.A.  The court reconsidered and declined to undo I.A.'s presumed father status because, quoting section 7612, subdivision (c), I.A. had "fulfilled the child's physical needs and the child's psychological needs for care and affection and assumed [that] role for a substantial period of time" and the child was born during I.A.'s marriage to mother.  The court did not make an express finding that it would be detrimental to the child if it did not name both Jose F. and I.A. presumed fathers.

The juvenile court sustained the section 300 and released the child to I.A.

6

## III. DISCUSSION

A.   *Standards of Review*

We independently interpret section 7612 and review the juvenile court's factual findings regarding parentage under section 7612 for substantial evidence.  (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088.)

B.   *Analysis*

"As a general rule, there can be only one presumed father. [Citation.]"  (*In re Donovan L., supra*, 244 Cal.App.4th at p. 1086, internal quotation marks omitted.)  There is an exception to this general rule, intended to apply only in rare circumstances,[3] in section 7612, subdivision (c) which provides:  "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child.  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a

---

[3]   The Legislature's bill enacting the current version of section 7612, subdivision (c) (Sen. Bill No. 274 (2013–2014 Reg. Sess.) included a statement of legislative intent that provided, in part, "'It is the intent of the Legislature that this bill will only apply in the *rare* case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents.'"  (*C.A. v. C.P.* (2018) 29 Cal.App.5th 27, 35 citing Stats. 2013, ch. 564, § 1, italics added.)

parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."

In *Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 385 (*Martinez*) the court of appeal explained, "in the dependency context, even a man 'with no biological connection to the child, no marital connection to the mother, and no way to satisfy the statutory presumption of paternity may nevertheless be deemed a presumed father' *if* he can prove 'an existing familial relationship with the child,' a bond the likes of which "'should not be lightly dissolved.'"  [Citations.]  It is this familial relationship with a parent who has fulfilled the child's needs for care and affection for a considerable amount of time, that modifies the phrase 'stable placement' and that provides the context for the [juvenile] court's evaluation of detriment under section 7612, subdivision (c)."

Section 7612, subdivision (c) permits the designation of a third parent only if a juvenile court finds that "recognizing only two parents would be detrimental to the child."  (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1316 [reversing the presumed father designation of a third parent pursuant to section 7612, subdivision (c) where a juvenile court did not consider whether recognizing only two parents would be detrimental to the child].)  Here, the juvenile court did not make the required detriment finding.[4]  Instead, it based its ruling on (1) I.A.'s fulfillment of the

_____

[4]     Even assuming section 7612, subdivision (c) is amenable to the doctrine of implied findings, we decline to imply a finding that the court found a detriment to the child because the evidence

8

child's "physical needs and the child's psychological needs for care and affection and assumed [that] role for a substantial period of time" and (2) the child was born during I.A.'s marriage to mother. Both of the court's reasons concerned whether I.A. could properly be designated as a presumed parent. (See *Martinez, supra*, 246 Cal.App.4th at p. 385, Fam. Code, § 7611, subds. (a) & (d).) Neither reason concerned whether the child would suffer a detriment if the court recognized only two parents (Jose F. and M.R.). Accordingly, the court erred.

---

of a detriment is not clear. (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825 ["where the trial court has failed to make express findings the appellate court generally implies such findings only where the evidence is clear. [Citations.]"].)

## IV.  DISPOSITION

The order naming I.A. a presumed father is reversed.  The matter is remanded to the juvenile court for it to make a ruling on whether recognizing only two parents (Jose F. and M.R.) would be detrimental to the child.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.