Filed 8/27/24  In re Bryan D. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| In re BRYAN D., a Person Coming Under the Juvenile Court Law. | B327818 |
| | (Los Angeles County Super. Ct. No. 22CCJP03476B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| DOUGLAS C., | |
| Defendant and Respondent; | |
| MARCO A., | |
| Objector and Appellant; | |
| BRYAN D., | |
| Minor and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner. Affirmed.

Katie Curtis, under appointment by the Court of Appeal, for Appellant Marco A.

Jill Smith, under appointment by the Court of Appeal, for Respondent Douglas C.

Karen J. Dodd, under appointment by the Court of Appeal, for minor Respondent Bryan D.

_____

**INTRODUCTION**

Minor Bryan D. (born 2013) is the child of mother Sara D. and has two presumed fathers as determined by the juvenile court: (1) his biological father, appellant Marco A., and (2) respondent Douglas C., Sara's partner since 2019 and the biological father of Bryan's half-sister Halsey (born 2020).[1] Marco appeals from the court's order at the jurisdiction and disposition hearing finding Douglas to be Bryan's second presumed father, a finding which would make Douglas eligible for visitation and reunification services. We conclude substantial evidence supports the court's findings and affirm.

---

[1]     The record refers to Marco A. as "Marcos A.," but counsel for Marco confirmed his correct name in its supplemental briefing, and we use Marco in this opinion.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Family and Household Background*

Bryan lived with his biological parents Sara and Marco from his birth in 2013 until they separated in either 2018 or 2019, residing first in California then in Nebraska.[2]

Sara began a relationship with Douglas sometime between 2017 and 2019, and moved to California with Bryan. Bryan lived with Sara and Douglas in California starting in 2019, along with his older half-sister Alisson (Sara's daughter, born 2008).[3] Bryan's half-sister Halsey was born to Sara and Douglas in 2020.

After Sara and Marco separated, Marco remained living in Nebraska but maintained weekly phone and video contact with Bryan and provided intermittent financial support and clothing to Sara for Bryan's care.

B.    *The Referral and Dependency Petition*

In July 2022, the Los Angeles County Department of Child and Family Services (Department) received a referral alleging Douglas was arrested after purportedly grabbing Sara around the

---

[2]    Sara reported she and Marco separated in "about 2018/2019" and they lived together until 2019. Marco reported he lived with Sara "from about 2012 to 2019" or until "about 2018," and that they terminated their relationship "in 2018/2019."

[3]    Sara reported to the Department that she and Douglas began their relationship and cohabitation in 2019. Douglas declared on his statement of parentage that Bryan and Alisson began living with him in 2017; but otherwise reported 2019 as the year his relationship and cohabitation with Sara and the children began.

neck and pushing her against a wall while he was intoxicated. Halsey was in the room. The superior court granted an emergency protective order protecting Sara from Douglas, which was subsequently terminated and the criminal case against Douglas was dropped on August 5, 2022.

On September 6, 2022, the Department filed a dependency petition on behalf of Bryan (then nine years old), Halsey, and Alisson alleging under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1), that Sara and Douglas had a history of violent altercations in the presence of the children.[4] The petition also alleged under subdivision (b)(1) that Douglas had a history of substance abuse and was a current abuser of alcohol.

C.     *The Children Are Detained from Douglas and the Court Grants Him Visitation; Douglas Requests Presumed Father Status*

In September 2022, the juvenile court held its initial hearing in this case and found Marco was Bryan's presumed father, over Douglas's objection. The court detained all three children from Douglas and released them to Sara, with nine hours of weekly monitored visitation with all three children for Douglas. Marco's whereabouts were unknown at the time, and the court ordered Bryan detained from Marco with monitored visits, with discretion to the Department to liberalize once it was in contact with Marco.

Douglas requested he also be found to be Bryan and Alisson's presumed father, and the juvenile court set a motion

---

[4]     All undesignated statutory references are to the Welfare and Institutions Code.

hearing for the request. Douglas filed a JV-505 Statement Regarding Parentage on September 20, 2022, requesting a judgment of parentage. Douglas stated Bryan and Alisson had lived with him since 2017, he had "helped raise Alisson and Bryan since 2017 as my own children," he told "[e]veryone" they were his children, he had participated in "[a]ll age appropriate activities," and provided them "[a]ll necessities" and "support and guidance in all categories."

In October 2022, Bryan and Alisson's counsel joined in the request that Douglas be found a presumed parent for both children. Bryan filed a declaration stating that he wanted "both my dad Marco and my dad Douglas to continue being my dads. If I could not have visits with Marco or Douglas anymore, I would be sad." Bryan declared he sometimes called Douglas "'pa'" and called Douglas's parents "'abuelita'" or "'grandma'" and "'abuelo'" or "'grandpa,'" and that he considered Douglas his dad and would want visits with him if Sara and Douglas broke up. He declared he introduced Douglas as his "'step-dad'" but Douglas introduced himself to Bryan's friends as "'Bryan's dad,'" and Bryan did not correct him. Bryan declared that before this dependency case he lived with Douglas and saw him every day, and they played soccer, went to the park, and got ice cream together.

At a hearing on October 27, 2022, Sara also joined in Douglas's request for presumed father status for Bryan and Alisson. The juvenile court granted presumed father status to Douglas as to Alisson. Bryan's counsel argued Bryan considered both Marco and Douglas his fathers, and it would be detrimental to Bryan not to have Douglas as his presumed father because it would set him apart from his siblings and longtime family unit. Marco objected to Douglas having presumed father status for

5

Bryan, and the juvenile court ordered Marco's counsel to file a written response and continued the hearing as to Bryan's parentage. The court released Bryan to Sara and Marco, with primary residence with Sara.

In November 2022, the Department reported that Marco was in the process of moving from Nebraska to Los Angeles. The Department reported that "[w]ith respect to the paternity issue, [Marco] stated that although he appreciated [Douglas] helping to provide for his son Bryan during the past 2-3 years," Marco opposed Douglas being named as a second presumed father. The Department reported that Bryan stated he considered both Marco and Douglas "to be like fathers" but he saw Marco as his "real father" and Douglas as his "step-father." The Department also reported that Sara and Douglas both expressed their intentions were to resume a relationship with each other if allowed to do so.

In February 2023, the Department reported Marco was living in Los Angeles and having weekly visits with Bryan. The Department reported Douglas was not able to visit the children three times weekly due to his unpredictable work schedule, which involved travel to another county, but Douglas spoke to Bryan by telephone or video chat almost daily for between 15 minutes and one hour. Bryan enjoyed the visits and never declined or demonstrated apprehension when speaking with Douglas. During a visit in November 2022, the monitor reported Douglas was "attentive and responsive towards the children," engaged with them and demonstrated affection, including hugging them and bringing them food. At other visits in November 2022 and January and February 2023, the Department noted "minimal interaction" between the two older children and Douglas because

Douglas focused his attention on Halsey more than on Alisson and Bryan.

D.    *The Jurisdiction and Disposition Hearing and Douglas's Presumed Father Determination*

On March 3, 2023, the court held the jurisdiction and disposition hearing, as well as the hearing on Douglas's request for presumed father status as to Bryan.  Sara, Douglas, Marco, Alisson, and Bryan were present at the hearing.

Bryan testified he had one mom and two dads.  He called Douglas "'dad'" when they lived together, and they also did things like go to the park and play soccer.  Douglas made sure he was safe and that the children would not go out alone at night.  Bryan testified he called Douglas's parents "'grandma'" and "'grandpa,'" he wanted both Douglas and Marco to continue being his dads, and he wanted to keep having visits and living with Douglas, even if Douglas and Sara broke up.  He testified he would feel "sad" if Douglas was not his dad anymore because Douglas "was there for me" and would cheer him up when he got hurt.  Bryan testified he would be "mad" if his sisters got to see Douglas and he did not, he had no fear of Douglas at all, and he was sad when Douglas missed visits with him.

Bryan's counsel argued it would be detrimental for Bryan to not have both Douglas and Marco as presumed fathers because Bryan had lived with Douglas, was having visits with Douglas, and Douglas and Bryan would lose all rights to have contact through visitation or custody orders if the case closed without a finding that Douglas was Bryan's presumed parent.  His counsel also argued it would set Bryan apart from his two siblings, for whom Douglas had presumed father status, with the concomitant

rights to visitation. Douglas's counsel joined in Bryan's counsel's arguments "in whole" and submitted on Douglas's motion for a statement of parentage.

Marco's counsel argued that while Douglas "does care for Bryan and Bryan is bonded to him," Douglas had missed visits because of work and "[had] not been prioritizing the children" while under court supervision. He also argued it was inappropriate for a father who has exposed children to domestic violence to be granted "special status." His counsel further argued Marco was "in the picture" and caring for Bryan, and there was no indication Douglas would continue to take on ongoing parental responsibilities for Bryan if Douglas remained separated from Sara.

The Department stated it had no position on whether both Douglas and Marco should have presumed father status.

The juvenile court concluded that Douglas had a "strong relationship" with Bryan and satisfied the requirements of Family Code section 7611, subdivision (d), for presumed parent status. The court stated that, "I do find that the evidence before the court is such that [Douglas] should be found presumed," and that it "fully adopt[ed] the arguments of [Bryan's counsel]" in granting Douglas's motion to be deemed a presumed father.

The juvenile court sustained the allegations in the section 300 petition, and ordered Bryan be removed from Douglas and remain released to Sara and Marco with family maintenance services. The court ordered family enhancement services and monitored visitation for Douglas a minimum of nine hours weekly, with discretion to the Department to liberalize visits.

Marco timely appealed, challenging the court's finding Douglas was Bryan's presumed father. Counsel for Douglas and

8

Bryan each filed respondent's briefs, joining in each other's arguments. The Department filed a letter stating it took no position on the matter and would not be filing a respondent's brief.

## DISCUSSION

A. *Mootness*

On January 18, 2024, while this appeal was pending, the juvenile court terminated jurisdiction as to Bryan, awarded joint legal and physical custody of Bryan to Sara and Marco, with primary residence with Sara, and ordered monitored visitation for Douglas. The court reiterated its parentage findings and judgment that Marco and Douglas were both presumed fathers of Bryan. Marco timely appealed from these orders pursuant to *In re Rashad D.* (2021) 63 Cal.App.5th 156. We granted Marco's motion for judicial notice of the January 18, 2024 orders in this case and his appeal therefrom under Evidence Code sections 452, subdivision (d), and 459, and invited the parties to submit letter briefs addressing whether this appeal is moot.

Bryan's counsel argued the appeal is moot and should be dismissed because there is no effective relief the court can provide to Marco, and further argued we should not exercise discretionary review to reach the merits. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 ["The critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error."]; *In re Rashad D., supra,* 63 Cal.App.5th at p. 163 ["An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot."].)

Marco argued his appeal is not moot because he also appealed from the January 18, 2024 exit order and termination of jurisdiction, and his challenge is to a parentage determination that continues to impact his parental rights.

We conclude Marco's protective appeal from the exit orders and termination of jurisdiction in the underlying dependency case means this case is not moot because we may provide effective relief. Under section 362.4, when a juvenile court terminates jurisdiction over a case, it may "issue an order 'determining the custody of, or visitation with, the child,'" which "may be enforced or modified by the family court." (*In re Ryan K.* (2012) 207 Cal.App.4th 591, 594, fn. 5.) Such orders are "sometimes referred to as 'family law' orders or 'exit' orders." (*Ibid*.) As this court explained in *In re Rashad D., supra,* 63 Cal.App.5th 156, "termination of dependency jurisdiction does not necessarily moot an appeal from a jurisdiction finding that directly results in an adverse juvenile custody order. But in most cases . . . for this court to be able to provide effective relief, the parent must appeal not only from the jurisdiction finding and disposition order but also from the orders terminating jurisdiction and modifying the parent's prior custody status. Without the second appeal, we cannot correct the continuing adverse consequences of the allegedly erroneous jurisdiction finding." (*Id.* at p. 159.) Marco followed this procedure by appealing from the exit orders and termination of jurisdiction.

Marco also seeks relief that may have an impact on the harm he complains of: the determination that Bryan has a second presumed father. "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or

10

capable of being rectified by the outcome the plaintiff seeks."
(*In re D.P., supra,* 14 Cal.5th at p. 276.)  The high court explained
that "relief is effective when it 'can have a practical, tangible
impact on the parties' conduct or legal status,'" requiring "some
effect on the plaintiff's legal status that is capable of being
redressed by a favorable court decision."  (*Id.* at p. 277.)
"[S]peculative future harm" is insufficient to avoid mootness.  (*Id.*
at p. 278.)  But "when a parent has demonstrated a specific legal
or practical consequence that will be averted upon reversal, the
case is not moot, and merits review is required."  (*Id.* at p. 283.)
Here, Marco has identified a determination that affects his legal
rights in an ongoing way:  the juvenile court's grant of presumed
parent status to Douglas, rendering Douglas eligible for visitation
and reunification services with Bryan.  Reversal of the court's
parentage determination would avert this consequence and
return Marco to the legal position of sole presumed father,
without the prospect of shared custody, decision-making, or
visitation with Douglas.[5]

B.     *Governing Law and Standard of Review*
        Dependency law recognizes "'presumed,'" "'biological,'" and
"'alleged'" fathers.  (*In re Jovanni B.* (2013) 221 Cal.App.4th
1482, 1488; *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120.)
Presumed father status ranks highest, and only a presumed
father is entitled to reunification services, custody absent a
finding of detriment, and appointed counsel.  (See *In re J.H.*

---

[5]     Because we conclude Marco's appeal is not moot, we do not
address the factors for determining whether to exercise our
discretion to reach the merits of a moot appeal.  (*See In re D.P.,
supra,* 14 Cal.5th at pp. 282-286.)

11

(2011) 198 Cal.App.4th 635, 644; *In re T.R.* (2005)
132 Cal.App.4th 1202, 1209; *In re Jerry P.* (2002) 95 Cal.App.4th
793, 801.)  A presumed father is one who meets one or more of
the statutory criteria for presumed parent status specified in
Family Code section 7611.  (See *Martinez v. Vaziri* (2016)
246 Cal.App.4th 373 (*Martinez*); *In re J.H.,* at p. 644.)  "A
biological or natural father is one whose biological paternity has
been established, but who has not achieved presumed father"
status.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.)  A
man who may be the child's father, but who has not achieved
presumed father status and whose biological paternity has not
been established is an alleged father.  (See *ibid.*)

Here, the juvenile court found Douglas to be a presumed
father under Family Code section 7611, subdivision (d), under
which a person may qualify for presumed parent status if the
person "'receives the child into [their] home and openly holds out
the child as [their] natural child.'"  "[T]here is no requirement in
section 7611, subdivision (d) the presumed father be the
biological father" (*In re Jerry P., supra,* 95 Cal.App.4th at p. 816),
"[n]or is it necessary for the person seeking presumed parent
status to have entered into the familial relationship from the
time of conception or birth" (*Jason P. v. Danielle S.* (2014)
226 Cal.App.4th 167, 177).  A person requesting presumed parent
status under Family Code section 7611, subdivision (d), must
have a "*fully developed parental relationship*" with the child
(*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776 (*R.M.*)) and must
demonstrate "'a full commitment to [parental] responsibilities—
emotional, financial, and otherwise'" (*In re Jerry P.,* at pp. 801-
802.)  "'"[T]he premise behind the category of presumed [parent]
is that an individual . . . has demonstrated a commitment to the

12

child and the child's welfare.""'" (*Martinez, supra,*
246 Cal.App.4th at pp. 384-385; see *In re M.R.* (2017)
7 Cal.App.5th 886, 898 ["[T]he core issues are the person's
established relationship with and demonstrated commitment to
the child."].)

In most cases there is only one presumed father. (See *In re
Donovan L.* (2016) 244 Cal.App.4th 1075, 1086.) However, under
Family Code section 7612, subdivision (c), "In an appropriate
action, a court may find that more than two persons with a claim
to parentage under this division are parents if the court finds
that recognizing only two parents would be detrimental to the
child." Thus, the Legislature has established a mechanism for
additional parents to be recognized in those "'rare cases' in which
a child 'truly has more than two parents' who are parents 'in
every way.'" (*In re Donovan L.*, at p.1090; accord, *Martinez,
supra,* 246 Cal.App.4th at p. 387; see Stats. 2013, ch. 564, § 1(a),
(d).)

"In determining detriment to the child, the court shall
consider all relevant factors, including, but not limited to, the
harm of removing the child from a stable placement with a
parent who has fulfilled the child's physical needs and the child's
psychological needs for care and affection, and who has assumed
that role for a substantial period of time. A finding of detriment
to the child does not require a finding of unfitness of any of the
parents or persons with a claim to parentage." (Fam. Code,
§ 7612, subd. (c).) An "appropriate action" for purposes of Family
Code section 7612, subdivision (c), includes "one in which a court
finds an *existing*, rather than potential, relationship between a
child and a putative third parent, such that 'recognizing only two
parents would be detrimental to the child.'" (*In re Donovan L.,*

13

*supra,* 244 Cal.App.4th at pp. 1089-1090; see *In re L.L.* (2017) 13 Cal.App.5th 1302, 1315-1316 [court erred in recognizing biological father as a third parent where the child did not "have a strong relationship with" or any "existing relationship" with the biological father].) "It is this familial relationship with a parent who has fulfilled the child's needs for care and affection for a considerable amount of time, that modifies the phrase 'stable placement' and that provides the context for the trial court's evaluation of detriment under section 7612, subdivision (c)." (*Martinez, supra,* 246 Cal.App.4th at p. 385.)

"[W]e review factual findings regarding parentage under either section 7611 or section 7612 for substantial evidence." (*In re M.Z.* (2016) 5 Cal.App.5th 53, 64, 66.) "'We view the evidence in the light most favorable to the ruling, giving it the benefit of every reasonable inference and resolving all conflicts in support of the judgment. [Citation.] We defer to the trial court's credibility resolutions and do not reweigh the evidence. [Citation.] If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling.'" (*Ibid.*; accord, *R.M., supra,* 233 Cal.App.4th at p. 780.)

C.  *Substantial Evidence Supports the Juvenile Court's Findings that Douglas Is a Presumed Father and That It Would be Detrimental to Bryan Not To Recognize Both Fathers*

On appeal, Marco concedes that Douglas's "'demonstrated commitment' to [Bryan] likely satisfied the requirements of Family Code section 7611, subdivision (d)." We agree. Douglas lived with Bryan for a period of three or more years, cared for

14

Bryan, referred to himself as "Bryan's dad" to others, and provided Bryan with emotional and financial support and supervision. This constitutes substantial evidence that Douglas "receive[d] [Bryan] into [his] home and openly holds out [Bryan] as [his] natural child" (Fam. Code, § 7611, subd. (d)), and that Douglas demonstrated "a full commitment to [parental] responsibilities—emotional, financial, and otherwise." (*In re Jerry P., supra,* 95 Cal.App.4th at pp. 801-802.)

Marco argues that Douglas nevertheless failed to satisfy Family Code section 7612, subdivision (c), i.e., that Douglas failed to demonstrate it would be detrimental to Bryan if Douglas were not recognized as Bryan's second presumed father. Marco contends that although "the record showed Bryan did have some emotional attachment with Douglas and generally liked living with him as his son or stepson," Douglas's alleged domestic violence against Sara, his lack of stable housing at the time of the hearing, and his "minimal" interaction with Bryan during visits prevent Douglas from establishing he provided Bryan with a "stable placement" with "a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (Fam. Code, § 7612, subd. (c).)

We conclude there was substantial evidence before the juvenile court that Bryan and Douglas had an existing parent-child relationship and that not recognizing Douglas as Bryan's presumed father would be detrimental to Bryan. As noted, there was evidence before the juvenile court that Douglas took on the role of Bryan's father since at least 2019 and as early as 2017, resulting in a stable, *fully developed parental relationship* (*R.M., supra,* 233 Cal.App.4th at p. 776) for "a substantial period

15

of time" (Fam. Code, § 7612, subd. (c)). Bryan's testimony also established that he considered Douglas his dad, that Douglas had fulfilled Bryan's physical needs and his psychological needs for care and affection, and that Bryan would be "sad" and "mad" if he was not able to maintain a parent-child relationship with Douglas. The evidence thus demonstrates "'an existing familial relationship with [Bryan],' a bond the likes of which "'should not be lightly dissolved.'"" (*Martinez, supra,* 246 Cal.App.4th at p. 385; *In re D.M.* (2012) 210 Cal.App.4th 541, 554.) The Legislature intended the provision for more than one presumed parent "to prevent the disruption of established emotional bonds between a child and his or her caretakers." (*In re Alexander P.* (2016) 4 Cal.App.5th 475, 497.) Here, Bryan was clear that he had two fathers, and that he would be upset if the juvenile court did not find Douglas his presumed father.

That Douglas was observed paying more attention to infant Halsey during visits than to Bryan and Alisson does not establish a failure to meet Bryan's physical and psychological needs, given other evidence that Douglas spoke with Bryan almost daily and that Bryan was positive about their contact. Further, it is generally the case that domestic violence does not disqualify an individual from obtaining presumed parent status, but rather it is a factor the juvenile court may consider in weighing a request for presumed parent status. (See, e.g., *In re Alexander P., supra,* 4 Cal.App.5th at p. 496 [noting step-father's domestic violence was not directed toward the minor, so the court was unwilling to find it disqualifying].) The juvenile court considered Marco's arguments that Douglas should not get "special status" as a presumed parent due to domestic violence, and that Douglas had taken on a parental role for only "the most recent three years" of

16

Bryan's life, and nonetheless concluded the evidence supported a finding of detriment, which we do not reweigh on appeal.

## DISPOSITION

The juvenile court's findings and parentage order finding Douglas to be a second presumed father of Bryan are affirmed.


MARTINEZ, P. J.

We concur:


SEGAL, J.


STONE, J.